# PENNSYLVANIA RAILROAD COMPANY v. PUBLIC SERVICE COMMISSION OF THE COMMON-WEALTH OF PENNSYLVANIA ET AL.

## ERROR TO THE SUPERIOR COURT OF THE STATE OF PENNSYLVANIA.

No. 53.    Argued October 24, 1919.—Decided November 10, 1919.

A writ of error will lie to a judgment of the Superior Court of Pennsyl-
vania upholding a law of the State against an objection based on the
Federal Constitution, if the Supreme Court of the State refuses
to allow an appeal.  P. 568.

Want of power in a state commission to consider the constitutionality
of a law which it seeks to enforce can not limit the right of a party
affected to raise the question in the state courts.  Id.

As applied to an interstate train terminated by a mail car, the law of
Pennsylvania (Laws 1911, p. 1053, § 7), forbidding the operation

of any train consisting of United States mail, or express, cars, without the rear end of the rear car being equipped with a platform of thirty inches in width, with guard rails and steps, invades a subject of regulation fully occupied by Congress through the rules of the Postmaster General respecting the construction of mail cars and their equipment when used as end cars, and under the commerce clause, as is evinced by the Safety Appliance Act and the regulations of the Interstate Commerce Commission thereunder, particularly those permitting the employment of caboose cars, which are constantly used as end cars, without platforms. *Id.*

67 Pa. Super. Ct. Rep. 575, reversed.

THE case is stated in the opinion.

*Mr. Frederic D. McKenney,* with whom *Mr. John Spalding Flannery* was on the brief, for plaintiff in error.

*Mr. William N. Trinkle,* with whom *Mr. George F. Snyder* and *Mr. Berne H. Evans* were on the brief, for defendants in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This case was begun by a complaint to the Public Service Commission of Pennsylvania that the plaintiff in error, the Pennsylvania Railroad, ran a specified train the last car of which was not equipped at its rear end with a platform thirty inches in width, guard rails and steps, as required by a statute of Pennsylvania. Act of June 19, 1911, § 7. The train was moving in interstate commerce. The Railroad Company admitted the facts but contended that it was not bound by the statute because the rear car was a mail car constructed in accordance with the regulations of the Post Office Department, and because the Government of the United States had assumed control of the matter so far as to exclude such intermeddling on the part of a State. The Commission made an order that the Rail-

road Company should operate its train with the rear end of the rear car equipped as required by the state law. The Railroad Company appealed to the Superior Court, setting up that the order violated the commerce clause of the Constitution (Art. I, § 8), and that in view of the federal legislation and rules, including the order of the Interstate Commerce Commission dated March 13, 1911, and made under the Safety Appliance Act, and other matters referred to, the State Commission had no power to do what it did.

. The Superior Court sustained the order holding itself bound by what it took to be the decision of the Supreme Court in *Pennsylvania R. R. Co.* v. *Ewing*, 241 Pa. St. 581, to the effect that nothing had been done by the United States inconsistent with the continued effect of the state law. An appeal to the Supreme Court was refused. On the strength of this it now is argued that the refusal must have been upon the ground that the Commission was a purely administrative body; that it had no judicial power to declare the statute unconstitutional; that therefore no question of the constitutionality of the act was before the Superior Court, and that this is implied because an appeal to the Supreme Court was a matter of right if the case had involved such a question. But whatever powers a State may deny to its commissions it cannot give them power to do what the laws of the United States forbid, whether they call their action administrative or judicial. The Superior Court treated the question as open. The Supreme Court merely denied an appeal upon a point that probably was thought to have been decided already by the Court.

We pass to the merits of the case. If all that had been done on behalf of the United States in the way of regulation had been to determine how mail cars should be built, and to exclude a thirty-inch platform, it might be said that the state law could be obeyed by putting a different

car at the end of the train. It would be a tax upon the railroad when the company wished to run a mail train wholly made up of mail cars, but it could be done and it is not necessary to say that the State could not require it. But when the United States has exercised its exclusive powers over interstate commerce so far as to take possession of the field, the States no more can supplement its requirements than they can annul them. *Southern Ry. Co.* v. *Railroad Commission of Indiana*, 236 U. S. 439, 446. *Charleston & Western Carolina Ry. Co.* v. *Varnville Furniture Co.*, 237 U. S. 597, 604. *New York Central R. R. Co.* v. *Winfield*, 244 U. S. 147. In the present instance the rules for the construction of mail cars, admitted to be valid, not only exclude the wide platform but provide an equipment for them when used as end cars. The Safety Appliance Act with its careful requirements for the safety of the men was followed by most elaborate regulations issued by the Interstate Commerce Commission which include three large pages of prescriptions for "Caboose Cars without Platforms." Caboose cars constantly are used as end cars and these pages like the Post Office order as to mail cars recognize the lawfulness of an end car such as the Pennsylvania statute forbids.

The question whether Congress and its commissions acting under it have so far exercised the exclusive jurisdiction that belongs to it as to exclude the State, must be answered by a judgment upon the particular case. The subject-matter in this instance is peculiarly one that calls for uniform law and in our opinion regulation by the paramount authority has gone so far that the statute of Pennsylvania cannot impose the additional obligation in issue here. The Interstate Commerce Commission is continually on the alert, and if the Pennsylvania law represents a real necessity, no doubt will take or recommend steps to meet the need.

*Judgment reversed.*

MR. JUSTICE CLARKE dissenting.

Of course I agree with the majority of the court that if the United States had taken possession of the field involved in this controversy, the State could not supplement or annul its requirements or regulations, and it is because it seems to me clear that it has done nothing of the kind that I dissent from the conclusion of the court.

The Interstate Commerce Commission has never assumed control over the manner in which trains shall be made up, or manned, or moved, so far as I know,—certainly there is nothing in the record in this case to indicate that it has done so.

The section of the state statute held invalid has to do, not with individual cars, but with high speed trains of cars in operation, and it does not prescribe what the construction of mail or express cars shall be, but only that the rear car of trains made up of mail or express cars shall be equipped with a platform as prescribed, with "exits free from obstruction." It may be a mail car, or an express car, or a passenger coach or a caboose,—the only requirement is that it shall have a platform with guard rail and steps.

For the reason that federal authority had not occupied the field, this court has upheld state laws prescribing the number of men who must be employed to operate trains, *Chicago, Rock Island & Pacific Ry. Co.* v. *Arkansas,* 219 U. S. 453, the manner in which the cars of passenger trains shall be heated, *New York, New Haven & Hartford R. R. Co.* v. *New York,* 165 U. S. 628, the kind of headlight which engines shall carry, *Atlantic Coast Line R. R. Co.* v. *Georgia,* 234 U. S. 280, and that trainmen shall be subject to state examination as to their qualifications, *Smith* v. *Alabama,* 124 U. S. 465; *Nashville, Chattanooga & St. Louis Ry.* v. *Alabama,* 128 U. S. 96.

In this case the action of the court is rested chiefly on the single circumstance that the Interstate Commerce

Commission has prescribed requisites for "Caboose Cars without Platforms," and since caboose cars are constantly used as end cars, therefore it is concluded the Commission recognizes as lawful a type of end car which the state statute condemns.

If the construction prescribed for "Caboose Cars without Platforms" at all resembled or was even approximately the equivalent of the construction of express or mail cars in the respects essential to the safety and promptness of service on the rear end of fast trains, or if it appeared that such cabooses are or could be used on such trains, the inference might be justified, but the difference between the two is radical and fundamental. As thus: the illustrations in the record show that mail and express cars have only narrow stirrups and single handholds at the side doors and at their ends, and the ends are equipped with vestibule frames, which render access difficult and dangerous to the brake wheel and markers (signal lights and flags) and to the handholds and stirrups for mounting or alighting. But the requisites prescribed for a "Caboose without Platform" are, a curved and a straight handhold on opposite sides of each side door, and "Side-door Steps" under each door, with a minimum length of five feet, a minimum width of six inches, a minimum height of back-stop of three inches, and hung a maximum height of only twenty-four inches from the top of rail. Such handholds, with such a long, wide and low-hanging step give facilities for mounting or alighting from such a caboose, when in motion, comparable in safety to those of an end platform, and are obviously much better and safer than those on mail or express cars.

The importance of rear-end signals cannot be overstated, yet the construction of the ends of express and mail cars, as shown in the illustrations in the record, is such that such signals can be observed by trainmen with difficulty, when the train is moving, and can be put in place

or removed only with great risk of injury, especially in time of storm of wind or rain or when the precarious foothold on the narrow ledge of the slightly extended end sill is covered with ice or snow. Such danger is entirely obviated by use of the inexpensive platform prescribed by the state statute.

To this we must add that a caboose is used only on slowly moving freight trains, while the state act deals only with fast trains, which start so rapidly that mounting them is especially dangerous for men, who, in the discharge of duty, must usually be on the ground to the last moment, for observation and for signalling, and with whom a few moments in alighting, when the emergency signal is given, may mean the difference between safety and disaster to themselves and to passengers and property on such and other trains.

It was to furnish facilities to employees for prompt and reasonably safe mounting and alighting from these fast trains and for the discharge of other duties without excessive danger that the statute was enacted, and it seems to me, for the reasons stated, that permitting the use of cabooses without platforms does not cover the rear end requirements of fast express and mail trains, and that the court, in its decision, makes a misapplication of that permission.

It will excite surprise in many minds that the plaintiff railroad company does not make, as it is believed many carriers do make, such provision as this statute requires, or its equivalent, from motives of economy, as a protection from injury to employees and danger to property as well as from the humanitarian motive so obviously involved.

Believing, as I do, that the section of the state statute is a humane, reasonable and intelligent provision for promoting the safety of employees, passengers and property arising from special conditions on the lines of railway, and

that there is no federal provision having a like purpose, I decline to share in striking down as unconstitutional a law passed by the legislature of Pennsylvania, approved by the Public Service Commission of that State as reasonable and necessary and, as I think, by its highest court as constitutional.