## ATLANTIC COAST LINE R. CO. v. NAPIER, Atty. Gen., et al.

(District Court, N. D. Georgia, N. D. December 20, 1924.)

### No. 311.

**1. Commerce ☞8(4)—Georgia statute requiring automatic locomotive fire box doors invalid as to locomotives in interstate commerce.**

Laws Ga. 1924, p. 173, requiring railroad steam locomotives to be equipped with automatic fire box doors, *held* invalid as to locomotives engaged in interstate commerce; Act March 4, 1915 (Comp. St. § 8604a) and Act of June 7, 1924, amending Act Feb. 17, 1911, § 2 (Comp. St. § 8631), and rules of Interstate Commerce Commission, having exclusively occupied the field as to safety appliances on locomotives engaged in interstate commerce.

**2. Commerce ☞8(4)—Interstate commerce safety rules exclusive rules of law.**

Rules and regulations authorized by the Interstate Commerce Commission to fix the standard of safety appliances, when approved and filed, are the exclusive law of transportation to which they apply.

In Equity. Suit by the Atlantic Coast Line Railroad Company against George M. Napier, Attorney General, and others. Decree for complainant.

Alston, Alston, Foster & Moise, of Atlanta, Ga., for complainant.

Geo. M. Napier, Atty. Gen., for defendant.

Branch & Howard, of Atlanta, Ga., and Thomas Stevenson, of Cleveland, Ohio, for the Brotherhoods.

SIBLEY, District Judge. The Georgia statute of August 5, 1924 (Laws Ga. 1924, p. 173), whose execution is sought to be enjoined, requires, under daily penalty, that all steam locomotives of specified types, operating in or through the state after January 1, 1925, be equipped with an automatic door to the fire box of a construction therein described. There appears no such cost of installation or insufficiency of time between the passing of the law and its operative date, or want of adaptation of means to a proper legislative end or arbitrary classification as to make the statute a taking of property without due process of law, or a denial of equal protection of the law. The real question is whether, in view of the congressional legislation on the subject, its provisions can be applied to carriers and locomotives engaged in interstate commerce, as the complainant and its locomotives are admitted to be. By the Act of Congress of March 2, 1893 (Comp. St. §§ 8605–8612), carriers by railroad, in interstate commerce, were required to equip locomotives with power brakes; by the Act of May 30, 1908

(sections 8624–8629), safety ash pans were required; the Act of May 27, 1908 (section 8616), required the Interstate Commerce Commission to investigate, test, and report on safety appliances of all kinds; the Act of February 17, 1911 (sections 8630–8639), dealt with the safety of boilers and their appurtenances, providing for inspections and the establishment of rules touching the same under the direction of the Commission. At this stage of the legislation it was held that Congress had neither directly nor through the Commission covered the matter of headlights for locomotives, and that the states were still free to legislate touching them. Atlantic Coast Line v. Georgia, 234 U. S. 280, 34 S. Ct. 829, 58 L. Ed. 1312. Thereafter the act touching inspection of boilers was, on March 4, 1915, made "to apply to and include the entire locomotive and tender and all parts and appurtenances thereof." It was intimated in Vandalia Railroad v. Indians, 242 U. S. 255, 37 S. Ct. 93, 61 L. Ed. 276, that a different ruling from that made in the Georgia case would be proper thenceforth.

In line with the legislation last named, by the Act of June 7, 1924 (43 St. 659), section 2 of the original act of February 17, 1911, was amended to read thus: "Sec. 2. That it shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions of this act and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for."

The Interstate Commerce Commission, since the amendment of 1915 (Comp. St. § 8604a), has promulgated rules of inspection regarding many appliances, looking to safety on locomotives, including headlights of a stated capacity, cab windows of specified arrangement, and having protection from obscuration by snow, whistles, sanding apparatus, and the like. The chief inspector has several times reported the desirability of automatic fire doors such as are required by the Georgia statute, but the carriers have not proposed nor the Commission required a rule of inspection providing for these.

[1] The defendants contend that Congress has not, by its legislation, dealt with fire doors; that the function of the Commission is but to approve the kind of locomotives and appurtenances that the carriers have put in use and to see that they, such as they are, are kept in proper and safe condition, and that it has no authority to require other and different types of locomotive or other or different equipment; and, if the Commission has the power to require fire doors, it has not exercised it, and that the field of legislation thus left open may be occupied by the states; and that, especially in the exercise of its police power the state, for the safety and health of its citizens, may make requirements which are not repugnant to any constitutional act of Congress. These contentions cannot prevail here. It is settled that legislation for the safe equipment of railroad engines and cars used by interstate carriers is within the congressional power to regulate interstate commerce. The same matter may also be within the reserved police power of the states. But the state statute here in question, concerning itself solely with the locomotives of railroad companies, seems more clearly a regulation of commerce than a police regulation for the good of the general public. The case to that extent differs from that of Atlantic Coast Line v. Bahnsen (D. C.) 300 F. 233. But, whether it be an effort to regulate commerce by acting on its instrumentalities or an exercise of police power, the state statute as applied to the locomotives of carriers engaged in interstate commerce finds the field fully occupied by paramount federal legislation. By the enactments of 1915 and 1924 above referred to Congress has required of such carriers the use of locomotives in proper condition and safe to operate in all their parts and appurtenances, and authorized the Commission, by rules and regulations, to fix the standard of safety and propriety.

[2] Though the act contemplates liberty in the carrier to initiate these rules and regulations for the Commission's approval, the Commission may disapprove what is offered, and promulgate its own tests of fitness. This resembles the process of rate making, and, just as the rates when approved and filed are the exclusive law of transportation to which they apply, so these rules when approved are the law of locomotive equipment. The Commission has in fact already required such appurtenances as headlights, cab windows, whistles, and sanding apparatus, which is a practical construction by it

of its powers entitled to some weight. The title of the act of 1911 states that its purpose was to "compel common carriers engaged in interstate commerce to equip their locomotives with safe and suitable boilers and appurtenances thereto," not simply to inspect and keep in order such boilers and appurtenances as they had. The purpose stated in the title of the several Safety Appliance Acts is to be realized in the interpretation of the language of their bodies. Southern Railway Co. v. Crockett, 234 U. S. 725, 34 S. Ct. 897, 58 L. Ed. 1564.

This purpose by the amendments is broadened into the compelling of a safe locomotive in all its parts and appurtenances. When a locomotive meets the tests and rules fixed by the Commission, it must, so far as carriers of interstate commerce are concerned, be esteemed proper and safe. The states cannot supplement or take from the requirements. There can be no division of responsibility and control. The provisions made by Congress are exclusive. Erie Railroad Co. v. New York, 233 U. S. 671, 34 S. Ct. 756, 58 L. Ed. 1149, 52 L. R. A. (N. S.) 266, Ann. Cas. 1915D, 138; Southern Railway Co. v. Indiana, 236 U. S. 439, 35 S. Ct. 304, 59 L. Ed. 661; Texas & Pacific Ry. Co. v. Rigsby, 241 U. S. 33, 36 S. Ct. 482, 60 L. Ed. 874. A decree may be entered enjoining the application of the state statute to locomotives within the provisions of the cited acts of Congress.