**STATEN ISLAND RAPID TRANSIT RY. CO. v. PUBLIC SERVICE COMMISSION OF STATE OF NEW YORK et al. and three other cases.**

(District Court, S. D. New York. September 9, 1926.)

1. Commerce ⟨⟩8(4)—New York law relating to electrification of railroads held invalid, as conflicting with federal Boiler Inspection and Safety Appliance Acts (Public Service Commission Law N. Y. § 53-a; U. S. Comp. St. § 8605 et seq., and section 8630 et seq.).

Public Service Commission Law N. Y. (Consol. Laws, c. 48), § 53-a, relating to the electrification of railroads in certain cities, and giving Public Service Commission power to prescribe equipment, held invalid, as in conflict with federal Boiler Inspection Act 1911, as amended (U. S. Comp. St. § 8630 et seq.), and federal Safety Appliance Act (U. S. Comp. St. § 8605 et seq.).

2. Commerce ⟨⟩8(4)—State law affecting electrification of railroads is controlled by a conflicting valid act of Congress previously adopted.

If state statute affecting electrification of railroad conflicts with lawful act of Congress already taken, the act of Congress prevails.

3. States ⟨⟩4—Conflict between state statute and act of Congress need not be literal and express, to result in invalidity of former.

For state statute to be invalid, as in conflict with act of Congress, it is not necessary that the conflict be literal or express.

4. Statutes ⟨⟩64(2)—State act requiring electrification of railroads, invalid in parts conflicting with federal statute, cannot be sustained as to other parts (New York Public Service Commission Law, § 53-a).

Public Service Commission Law N. Y. (Consol. Laws, c. 48), § 53-a, requiring electrification of certain railroads, and giving Public Service Commission power to prescribe equipment, etc., invalid in part as conflict with federal statute, cannot be held valid as to requirement of electrification.

In Equity. Suits for injunction by the Staten Island Rapid Transit Railway Company, by the Brooklyn Eastern District Terminal, by the New York Dock Railway, and by the Degnon Terminal Railroad Corporation against the Public Service Commission of the State of New York and others. On motions for preliminary injunctions. Motions granted.

The plaintiffs, along with a number of other railroads, filed bills in equity in the United States District Court for the Southern District of New York to enjoin the enforcement of section 53-a of the New York Public Service Commission Law (Consol. Laws, c. 48), which reads as follows:

*"Electrification of Railroads in Certain Cities.* No railroad corporation, operating a railroad or a part thereof within the limits of a city having a population by the last state or federal census of one million or more or within the limits of a city adjoining such city, shall on or after the first day of January, nineteen hundred and twenty-six, use any motive power in the operation of such railroad or part thereof within the limits of such city, except electricity to be generated, transmitted and used in said operation in a manner to be approved by the Public Service Commission. * * * The commission shall have power to prescribe the location, elevation, size, kind and construction of poles, wires, safety devices, conduits, and all erections, buildings, fixtures, appurtenances and equipment used or found by the commission desirable, to be used in the electrification, maintenance or operation of such railroad or part thereof within the limits of such city."

The defendants are the Public Service Commission of the state, the Transit Commission of the state, the Attorney General of New York, and the district attorneys of the several counties which are comprised within the area covered by the statute.

The bills alleged: That each plaintiff was a common carrier engaged in interstate commerce, operated a steam railroad in the city of New York, and was therefore within the terms of the statute. That the changes directed by the statute would involve large expense, out of any reasonable relation to the benefit conferred on the community, because they would affect only industrial districts, already so overcharged with smoke from factories that the plaintiffs' contributions were insignificant. That the time given for compliance with the act was too short to be practicable, and in some cases that it was physically impossible to comply at all; in some cases, that the changes involved large expenditures, which could be met only by the issue of new securities. That the section took property without due process of law, because of the incommensurability between outlay and benefit. That it denied the plaintiffs equal protection of the law, in that it singled out railroads alone. That it was a direct burden upon interstate commerce, because it required the plaintiffs to change their equipment as interstate carriers and to make such large outlays, and that it further trenched upon the powers of the Interstate Commerce Commission, to whom had been given jurisdiction under the Boiler Inspection Act and its amendments (Comp. St. § 8630 et seq.) to prescribe the kind of motive power to be used.

The defendants answered denying the allegations of law in the bills, admitting some of the facts and denying others. After the cases had been argued the New York Legislature amended section 53-a so as to give power to the New York Public Service Commission to extend the time within which the carriers might make the changes. Under that amendment, the Commission extended the time of all the original plaintiffs, except the four whose names appear above, whose applications they denied.

Frederick H. Wood, of New York City, for Staten Island Rapid Transit Ry. Co.

Charles E. Hotchkiss and H. C. McCollom, both of New York City, for New York Dock Ry.

Parker & Aaron, of New York City, for Degnon Terminal R. R. Corporation.

Henry B. Closson, of New York City, for Brooklyn Eastern District Terminal.

Charles G. Blakeslee, of Binghamton, N. Y., and Edward G. Degnon, for Public Service Commission.

Robert P. Beyer, of New York City, for Attorney General of New York.

Before HAND, Circuit Judge, and KNOX and THACHER, District Judges, sitting under the authority of section 266 of the Judicial Code.

HAND, Circuit Judge (after stating the facts as above). [1] We do not find it necessary to consider many of the questions raised by the parties in these cases. We shall assume for argument that, so far as concerns the Fourteenth Amendment, section 53-a is valid, not only because it does not take the plaintiffs' property without due process of law, but also because the selection for regulation of railroads alone has a reasonable basis. Possibly it would have been necessary, if the cases turned upon the point, for the suits to go to trial before we could say that the burden imposed was balanced by a communal gain considerable enough to justify its imposition, especially in the case of the Staten Island Railroad Company, but in the view we take that question is irrele-

vant. Finally, we shall assume that the section imposes no direct burden on interstate commerce; that is, that until Congress regulated the subject-matter, the state was free to direct the change. The significance of "direct" interference with such commerce, as opposed to "indirect," we shall not try to define.

[2] Nevertheless, with all these things conceded, the question still remains whether the section conflicts with any lawful action of Congress already taken, and is unconstitutional in that sense. If it does, confessedly the federal power prevails. Erie R. R. Co. v. New York, 233 U. S. 671, 34 S. Ct. 756, 58 L. Ed. 1149, 52 L. R. A. (N. S.) 266, Ann. Cas. 1915D, 138; So. Ry. Co. v. R. R. Commission, 236 U. S. 439;[1] Penn. R. R. Co v. Public Service Commission, 250 U. S. 566, 40 S. Ct. 36, 63 L. Ed. 1142; R. R. Commission v. So. Pac. R. R., 264 U. S. 331, 44 S. Ct. 376, 68 L. Ed. 713; Shafer v. Farmers' Grain Co., 268 U. S. 189, 45 S. Ct. 481, 69 L. Ed. 909.

[3] Nor is it essential to that result that the conflict should be literal and express, in the sense in which a subsequent statute may repeal an earlier by implication. It is only necessary that Congress shall discover a purpose to occupy the field, as the phrase goes, and to exclude any further action by the states. When that appears, if the subject be interstate commerce, it will invalidate existing as well as future laws. Charleston & W. C. R. R. v. Varnville Furniture Co., 237 U. S. 597, 35 S. Ct. 715, 59 L. Ed. 1137, Ann. Cas. 1916D, 333; New York Central R. R. v. Winfield, 244 U. S. 147, 37 S. Ct. 546, 61 L. Ed. 1045, L. R. A. 1918C, 439, Ann Cas. 1917D, 1139; Penn. R. R. v. Public Service Com., 250 U. S. 566, 40 S. Ct. 36, 63 L. Ed. 1142. The doctrine is at times hard to apply, but the proposition is indubitable.

The original Boiler Inspection Act of 1911 (Comp. St. § 8630 et seq.), as its name implies, did not cover all parts of the locomotive, and was necessarily limited to steam. In 1915 (Comp. St. § 8639a et seq.) it was, however, extended to cover the locomotive, its tender, and their appurtenances, and thus brought into being a system of federal inspection, with an attendant organization which covered all parts of steam locomotives used by interstate railroads. The scheme went further, however, than merely to provide for inspection, because the act not only required that, but that the boiler should be "in proper condition and safe to operate in the service to which the same is put," and

that it should "be able to withstand such test or tests as may be prescribed in the rules or regulations," which the Interstate Commerce Commission should from time to time promulgate. After 1915 this gave to the Interstate Commerce Commission power to prescribe the design, construction, and material of the whole locomotive, and with the Safety Appliance Act (Comp. St. § 8605 et seq.), put the supervision of all the steam rolling stock of interstate railroads into the hands of the Commission. On June 7, 1924 (Comp. St. § 8630 et seq.), more than a year after section 53-a of the Public Service Commission Law of New York was passed, this act, as amended, was extended to all locomotives, electric as well as steam, and the system became complete. It is with this statute in view that we must determine the validity of the local law.

It has been held by the Court of Appeals of New York and the Supreme Court of Alabama that, as respects the construction of the locomotive itself, the federal law is exclusive. Whish v. Public Service Com., 205 App. Div. 756, 200 N. Y. S. 282, affirmed on the opinion below 240 N. Y. 677, 148 N. E. 755; Louisville & Nashville R. R. Co. v. State, 16 Ala. App. 199, 76 So. 505. See, also, Atlantic Coast Line v. Napier (D. C.) 2 F.(2d) 891. The Interstate Commerce Commission has interpreted the amendment of 1924 in the same way by its order of December 14, 1925, which prescribed in great detail the requirements for electric locomotives, supplementing those earlier fixed for steam. We cannot see how any other conclusion can be reached. A locomotive, "in proper condition," as determined by tests prescribed in rules, is a locomotive which must comply with official standards, and whoever has power to set the standards finally determines how the locomotive shall be made.

Had section 53-a contented itself with merely directing all railroads to use electricity, an argument might be made that it did not impinge upon the powers so conferred by Congress. It might be said that the kind of locomotives to be used was left for the determination of the commission and that all that was required was that they should use electric power; that the decision as to where steam and where electricity was to be employed had not been confided to the commission, but remained within the powers of the states, as they might find it necessary for local purposes to prescribe. On the other side, it might be argued that design and func-

[1] 36 S. Ct. 304, 59 L. Ed. 661.

tion are inevitably correlative and cannot be separately determined; that the power to prescribe design involves the power to say whether the type, electrical or steam, is "proper" or "safe," as the arts stand, for the "service to which the same is put"; that the power to prescribe electricity, therefore, implies a decision that, among designs approved by the Interstate Commerce Commission, this or that is suitable in a given place, a decision inescapably wrapped up in the design itself. We decline to express any opinion upon the issue so raised.

We may avoid it because section 53-a is not confined merely to requiring the railroads to substitute electricity for steam. It goes further, and assumes to give the power to prescribe, not only the structures external to the locomotive—i. e., the poles, wires, safety devices, conduits, etc.—but the appurtenances and equipment" to be used. Even if read verbally this conflicts with the powers granted the Interstate Commerce Commission, which extend to the "appurtenances" of an electric locomotive. "Equipment" in section 53-a can hardly exclude the locomotive itself; but, even if it does, the "appurtenances" of an electric locomotive would naturally include the apparatus by which electricity is delivered to it. Regarded functionally, it seems to us that the whole installation must be electrically coherent throughout, and that it cannot have been the intention of Congress to divide the specifications between two independent and possibly conflicting authorities.

As an illustration, the local commission might prescribe the "third rail" system, and the national commission might insist upon a locomotive operated by the "overhead." How could such a dilemma be resolved? It appears to us that the "field occupied" by the Boiler Inspection Act must at least extend not only to the type of locomotive, but also to the structures which feed it its motive power. We need not consider more than this, because it is quite plain that in any showing the state statute comprises these.

[4] Nor can we say that section 53-a is valid in so far as it requires the substitution of electricity, and void in so far as it gives power to the local commission to determine the kind of locomotive with its appurtenant poles and wires or third rail. To do so we must assume that the state would be content with whatever the federal commission might prescribe, a conclusion certainly at variance with what it has said. Until we can be assured that merely to avoid steam was so paramount a purpose that the state would entertain it, regardless of how it might be fulfilled, we have no right to divide the statute and say that it is valid in part and void as to the rest. Therefore, though we were to accede to the state's argument suggested above, we should have to wait until the Legislature had spoken in more general language.

Finally, it is unnecessary to consider whether section 20-a of the Interstate Commerce Act, as added by section 439 of the Transportation Act of 1920 (Comp. St. § 8592a), also conflicts with' section 53-a; that is, whether the power of the Interstate Commerce Commission to forbid the issue of such securities as may be necessary if some of the plaintiffs are to comply, might make impossible an equal administration of the section according to its purpose. We find it necessary to say no more in this case than that the section is indivisible, and that it cannot be executed without trenching upon the jurisdiction assumed by Congress under the Boiler Inspection Act.

Our jurisdiction in such cases has been too often upheld to require any discussion. Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Western Union Tel. Co. v. Andrews, 216 U. S. 165, 30 S. Ct. 286, 54 L. Ed. 430; Greene v. L. & I. R. R. Co., 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Truax v. Raich, 239 U. S. 33, 36 S. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283; Terrace v. Thompson, 263 U. S. 197, 44 S. Ct. 15, 68 L. Ed. 255.

The motions for a preliminary injunction are granted.

KNOX and THACHER, District Judges, concur.