684 F.2d 721
 111 L.R.R.M. (BNA) 2201, 95 Lab.Cas. P 13,768
 LOCAL 472 OF the UNITED ASSOCIATION OF JOURNEYMEN AND
APPRENTICES OF the PLUMBING AND PIPEFITTING
INDUSTRY OF the UNITED STATES AND
CANADA, Plaintiff-Appellant,
v.
GEORGIA POWER COMPANY, et al., Defendants-Appellees.
 No. 81-7156.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 26, 1982.
 
 Almand, Grice, Knight & Mills, Ronald T. Knight, Warren C. Grice, Macon, Ga., for plaintiff-appellant.
 Michael C. Murphy, Atlanta, Ga., Alan E. Lubel, Macon, Ga., Hugh M. Davenport, Atlanta, Ga., for Ga. Power Co. and F. G. Mitchell, Jr.
 Herman L. Fussell, Peter R. Spanos, Atlanta, Ga., Albert P. Reichert, Jr., Macon, Ga., for Cleveland Consol. Inc. and J. R. Cleveland, Jr.
 William F. Welch, Atlanta, Ga., for Superior Elec. Contractors, etc. and Tommy Lanier, Jr.
 J. R. Goldthwaite, Atlanta, Ga., Jim O'Connell, Sally Armstrong, Washington, D. C., for United Assoc. of Journey, etc., Edwin Blair and Martin J. Ward.
 Appeal from the United States District Court for the Middle District of Georgia.
 Before FAY, JOHNSON and HENDERSON, Circuit Judges.
 FAY, Circuit Judge:
 
 
 1
 Local 472, a local union of plumbers and pipefitters, commenced this action after its international organization removed seven and one-half counties lying between Macon and Atlanta, Georgia from the jurisdiction of Local 472. Named as defendants are the International, Georgia Power Company, Cleveland Consolidated, Inc., Superior Contractors & Associates, Inc., and various representatives of those defendants. Local 472 appeals from the District Court's grant of summary judgment in favor of all defendants. We affirm.
 
 I. Background
 
 2
 Local 472 is based in Macon, Georgia and is chartered by an international organization, the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO (the United Association). The United Association, pursuant to its constitution, determines the trade and territorial jurisdiction of its local unions, including that of Local 472.
 
 
 3
 Local 472 enters into collective bargaining agreements with contractors who bid on jobs within the territorial jurisdiction of the local. During 1976 and 1977, one such contractor, Superior Contractors & Associates, Inc. (Superior Contractors), supplied members from Local 472 to work at the Plant Scherer project, a power plant being constructed by Georgia Power Company. Another contractor, Cleveland Consolidated, Inc., employed members of Local 472 at two other power plants operated by Georgia Power Company, Plant Harlee Branch and Plant Arkwright.
 
 
 4
 In April, 1977, Local 472's negotiating committee began bargaining sessions with the contractors' negotiating committee. The sessions were directed towards reaching a new bargaining agreement to become effective July 1, 1977. J. R. Cleveland, Secretary-Treasurer of Cleveland Consolidated was chairman of the contractors' committee. During the negotiations, Cleveland, Tommy Lanier, Director of Superior Contractors, and F. G. Mitchell, Vice-president of Georgia Power Company, maintained contact with each other and discussed the status of negotiations. Mitchell also discussed the negotiations with Edwin Blair, the International Representative of the United Association in charge of the State of Georgia.
 
 
 5
 The union representatives and the contractors were unable to reach agreement on wage rates and fringe benefits and when the existing bargaining agreement terminated on June 30, 1977, the members of Local 472 walked off the various job sites. Immediately after the walkoff, Cleveland, Mitchell, and Lanier sent letters to the United Association complaining about Local 472's bargaining stance and other problems they had with the local. Following the termination of the bargaining agreement, negotiations moved to the United Association's headquarters in Washington, D. C., where the parties eventually entered into a new collective bargaining agreement.
 
 
 6
 Approximately a month later, on September 1, 1977, Blair wrote a letter to Martin Ward, General President of the United Association, recommending that seven and one-half counties be transferred from the territorial jurisdiction of Local 472 to the jurisdiction of Atlanta-based Local 72. Included within those counties were the Plant Scherer project and Plant Harlee Branch. On September 19, 1977, President Ward sent a letter to Local 472's business agent advising that a hearing concerning Blair's recommendation would be conducted on October 5, 1977, in Washington, D. C. At the request of the United Association, Mitchell, Lanier, and Cleveland testified at the hearing. The hearing officer's report, issued on November 28, 1977, recommended that jurisdiction over the seven and one-half counties be transferred from Local 472 to Local 72. President Ward adopted the recommendation and severed Local 472's territorial jurisdiction on December 2, 1977.
 
 
 7
 Local 472 filed suit in state court on September 22, 1978. The complaint alleges that Local 472 "has a contract with Defendant (United Association) in the form of a constitution," that Local 472 has a "contract with Georgia Power for the construction of Plant Scherer," that the defendants "conspired together ... to deprive Plaintiff's members of employment ... by causing the breach of Plaintiff's ... contract with Georgia Power," that defendants "interfered with Plaintiff's property rights by preparing letters and ... seeking the removal of ... eight counties from the jurisdiction of Plaintiff" with the intention to "induce Defendant (United Association) to breach or change its contract with Plaintiff," and that the United Association "participated in the conspiracy ... by holding a mock hearing ... without due process of fair notice and without fair representation, and by removing jurisdiction over the eight counties from Plaintiff." In addition to damages, the complaint requests reinstatement of Local 472's territorial jurisdiction through injunctive relief.
 
 
 8
 The action was removed to the District Court for the Middle District of Georgia. Local 472's motion to remand was denied by the District Court on the basis of federal question jurisdiction under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 (1976). By April 1, 1980, all defendants had filed motions for summary judgment. Local 472 filed its response on June 19, 1980. On July 14, 1980, Local 472 filed a motion to amend its complaint. Without ruling on the motion to amend, the District Court granted summary judgment on January 19, 1981.
 
 
 9
 As we see it, the major issue in this case is whether the defendants' letters and actions are sufficient to raise an issue of tortious interference with Local 472's relationship with its international, the United Association. Another issue involves the duty of fair representation. Procedural and discovery issues are also raised and will be dealt with before we proceed to the merits.
 
 II. Discovery and Procedural Matters
 The Interrogatories
 
 10
 Local 472 takes issue with the District Court's handling of three sets of interrogatories it propounded to Georgia Power Company, Superior Contractors, and Cleveland Consolidated. The District Court returned the interrogatories directed to Superior Contractors and Cleveland Consolidated with a letter stating that the interrogatories were excessive in number under the Court's Local Rules. Local Rule "I" provides: "Interrogatories except with written permission of the court should not exceed a total of twenty questions (counting parts and sub-parts as separate questions) to each opposing party." (Emphasis in original.)
 
 
 11
 The local through a motion for reconsideration, asked the Court to permit the interrogatories. Dissatisfied with Georgia Power Company's response to its interrogatories, the local also filed a motion to compel further responses. The District Court made no ruling on either motion.
 
 
 12
 In light of the District Court's grant of summary judgment in favor of the defendants, we interpret the Court's silence regarding these motions as a denial. See Addington v. Farmer's Elevator Mutual Insurance Co., 650 F.2d 663, 666 (5th Cir.), cert. denied, --- U.S. ----, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981). The interrogatories to Superior Contractors and Cleveland Consolidated, counting parts and sub-parts, exceeded twenty questions. There was no abuse of discretion in refusing to permit these interrogatories. We have reviewed Georgia Power Company's response to the interrogatories and conclude that, while Georgia Power Company did not respond as fully as it perhaps could have, its response was adequate. There was no abuse of discretion in refusing to compel further response.
 
 The Motion to Amend
 
 13
 Citing a Georgia Supreme Court decision, Georgia Power Co. v. Busbin, 242 Ga. 612, 250 S.E.2d 442 (1978), the plaintiff requested leave to amend on the basis that Georgia tort law would not permit recovery against the United Association. Thus, by amendment, the local sought to drop the United Association and its representatives as parties. The District Court did not rule on this motion. Again, we interpret the District Court's failure to rule on the local's motion to amend as a denial. See Addington, 650 F.2d at 666. A denial of leave to amend is within a district court's discretion, but "leave shall be freely given when justice so requires." F.R.Civ.P. 15(a). In making this determination, a court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility of the amendment. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).
 
 
 14
 The local's motion to amend was filed two years after the action was instituted, after discovery was complete, and after all defendants had filed motions for summary judgment. In addition, the local never responded to the United Association's motion for summary judgment. The local's attempt to amend the complaint appears to be nothing more than an effort to avoid an adverse summary judgment ruling as to the United Association defendants. We conclude that the District Court did not abuse its discretion.
 
 III. Tortious Interference
 A Matter of Federal Common Law
 
 15
 The complaint in our case alleges that the defendants induced a breach of the international constitution and conspired together to interfere with property rights created by the constitution.[1] United Association of Journeymen v. Local 334, United Association of Journeymen, 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981), settles the question of jurisdiction. Therein, the Supreme Court held that union constitutions are "contracts" within the meaning of section 301(a) of the Labor-Management Relations Act.[2] Since Local 472's suit is based on property rights allegedly created by the constitution of its International, it is clear that the District Court had subject matter jurisdiction. It is also clear that principles of federal law govern breach of contract suits brought under § 301. United Association of Journeymen, 452 U.S. at 627, 101 S.Ct. at 2553; Atkinson v. Sinclair Refining Co., 370 U.S. 238, 248-49, 82 S.Ct. 1318, 1324-1325, 8 L.Ed.2d 462 (1962); Teamsters Local v. Lucas Flour Co., 369 U.S. 95, 102-04, 82 S.Ct. 571, 576-577, 7 L.Ed.2d 593 (1962); Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957).
 
 
 16
 However, while Local 472's complaint alleges a breach of the constitution, the local's theory of recovery is one of tortious interference with contractual or business relations. The local maintains that this cause of action is grounded on state law, not federal law. We disagree. "(T)he substantive law to apply in suits under § 301(a) is federal law, which courts must fashion from the policy of our national labor laws." Lincoln Mills, 353 U.S. at 456, 77 S.Ct. at 917. The Supreme Court has consistently cautioned that, since the " 'subject matter (of § 301) is peculiarly one that calls for uniform law,' " Lucas Flour, 369 U.S. at 103, 82 S.Ct. at 576 (quoting Pennsylvania R. Co. v. PSC, 250 U.S. 566, 569, 40 S.Ct. 36, 37, 64 L.Ed. 1142 (1919)), to read § 301 narrowly " 'would undercut the Act and defeat its policy.' " Atkinson, 370 U.S. at 249, 82 S.Ct. at 1325 (quoting Lincoln Mills, 353 U.S. at 456, 77 S.Ct. at 917). In this case, the local's action for tortious interference is based on the contractual relations which exist between the local and its International. The contract rights of the parties are governed by federal law. To hold that a tort action based on property rights allegedly created by the contract is governed by state law would be contrary to Supreme Court holdings and would defy reason. The national interest in a uniform body of labor relations law requires that the plaintiff's claim be judged by principles of federal law, not state law. See Wilkes-Barre Publishing Co. v. Newspaper Guild, 647 F.2d 372 (3d Cir. 1981), cert. denied, --- U.S. ----, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982); contra Loss v. Blankenship, 673 F.2d 942 (7th Cir. 1982). We agree with the reasoning of the Third Circuit in Wilkes-Barre:
 
 
 17
 The label attached to the remedy as tort or contract is not dispositive of the scope of federal common law which under section 301(a) it is our responsibility to create. A holding that tortious interference with a collective bargaining agreement is not a matter governed by federal law would leave open the possibility of lack of uniformity in scope of obligation which the Court in Lucas Flour sought to prevent.... (P)rotection against tortious interference does not involve an area traditionally relegated to the states. Rather it involves protection of a property interest-a labor contract-which has its being in and draws its vitality from the federal common law of labor contracts.
 
 
 18
 647 F.2d at 381 (footnote and citations omitted). Cf. Mobile Mechanical Contractors Association v. Carlough, 664 F.2d 481 (5th Cir. 1981), cert. denied, --- U.S. ----, 102 S.Ct. 1490, 71 L.Ed.2d 691 (1982) (under § 303 of the Labor-Management Relations Act, state action based on tortious interference with a lawful business is preempted); California State Council of Carpenters v. Associated General Contractors, Inc., 648 F.2d 527 (9th Cir. 1980), cert. granted, --- U.S. ----, 102 S.Ct. 998, 71 L.Ed.2d 292 (1982) ("(s)tate remedies for non-violent business-related torts ... are preempted"); Ramsey v. Signal Delivery Service, Inc., 631 F.2d 1210 (5th Cir. 1980) (state tort claims for emotional distress are preempted). We hold that the local's claim of tortious interference must be governed by federal common law. In determining the rights and liabilities of the parties under the local's legal theory, we may, of course, resort to "state law, if compatible with the purpose of § 301.... Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights." Lincoln Mills, 353 U.S. at 457, 77 S.Ct. at 918.
 
 The Letters
 
 19
 Local 472 argues that four letters written by defendants Mitchell, Cleveland, and Lanier raise a genuine factual dispute as to the claim of tortious interference.
 
 
 20
 Cleveland sent two letters to United Association headquarters. In the first, sent on June 3, 1977, Cleveland expressed "concern for the future of organized labor and union contractors in the Macon area." Cleveland stated that many contractors in the Macon area had gone open shop and that he feared that two of the larger companies would consider "alternatives other than organized labor" if negotiations with Local 472 did not result in a reasonable contract. Cleveland set forth the internal management problems of Local 472 as he saw them and requested the United Association's assistance with negotiations. Cleveland sent a second letter on July 1, 1977, advising the United Association of the work stoppage. Cleveland stated that Local 472 lacked responsible leadership and listed several jobs his company had lost to non-union contractors. He also stated that "because of past actions on the part of Local 472" his company was prohibited from working at a plant in Macon. He concluded with the following request:
 
 
 21
 It is our opinion that the United Association should take over the operation of this local. If necessary, we would suggest that Local 472 be merged with Atlanta's Local 72 where there exists responsible leadership. The fringe funds could be properly administered and hopefully prevent further thefts.
 
 
 22
 Lanier sent a letter to the United Association on July 6, 1977. He advised the International that his company contracted work at the Plant Scherer project and he expressed the following opinions:
 
 
 23
 We feel that to maintain a competitive area like Macon, it is necessary to maintain a proper work wage to compete with the Non-Union factions. It is also imperative that any contractor be able to secure quality workmen and supervision from a local union such as Local Union 472.
 
 
 24
 It has been our experience in Local Union 472 that since there are so many factions and no positive leadership, it is almost impossible to secure the quality of workmen necessary to do the job.
 
 
 25
 Knowing this and realizing that we are about to start manning the Plant Scherer project, we have no other solution but to ask for your help. We, at the present time, have or did have six fitters employed on this project until their contract expired and they walked off the job. We have been able to maintain the proper attitude of these fitters; but as you know, six fitters cannot maintain the work of a complete powerhouse. We feel that our fitter, welder, and plumber manpower needed for this project will be between 150 and 200 men. With these factions persisting in Local Union 472 and with the general attitude of the men, we will never be able to complete this project under the present conditions.
 
 
 26
 We are asking you to use your power and influence to correct this situation in whatever manner necessary. Hopefully you will see fit to reassign this project to the Atlanta Jurisdiction Local Union 72. This move will correct most of our problems.
 
 
 27
 On July 1, 1977, Mitchell sent the following comments to the United Association:
 
 
 28
 I think it is time that some drastic steps must be taken as far as the Macon Local is concerned. The Georgia Power Company and several of our contractors have had dealings with this Local for the past fifteen years, and we have had nothing but trouble. The union leadership has been anything but responsible, and a good percentage of the membership has been worse than the leadership.
 
 
 29
 ....
 
 
 30
 We have started to work on our Plant Scherer project in Monroe County.... This plant is located in the Macon jurisdiction. Having built four units at Plant Harllee Branch in the 1960's with all kinds of problems with this local, we are not exactly in the mood to go through the same thing at Plant Scherer. As a matter of fact, we are not going through the same thing again.
 
 
 31
 As a step in the right direction, I highly recommend that the Macon Local be placed under the jurisdiction of the Atlanta Local No. 72. We think that your organization as well as my company and our contractors, would be much better off with the Atlanta Local rather than the Macon Local. If the Atlanta Local cannot handle the job properly, then we would insist that the U. A. take our job over.
 
 Privileged Communications
 
 32
 In examining a claim of tortious interference, a court must examine the nature of the alleged culpable actions. Liability cannot be predicated on actions which are "justified" or "privileged." See, e.g., Orkin Exterminating Co. v. Martin Co., 240 Ga. 662, 242 S.E.2d 135 (1978); Nager v. Lad 'N Dad Slacks, 148 Ga.App. 401, 251 S.E.2d 330 (1978); Annot., 26 A.L.R.2d 1227 (1952); Annot., 9 A.L.R.2d 228 (1950). The concept of privilege involves a balancing process. Taking into consideration the nature of the conduct, the relationship between the parties, and the interest sought to be advanced by the "interferor" and to be protected by the complaining party, the court must determine whether societal interests in protecting the interferor's actions outweigh the particular property interest at stake. See Restatement (Second) of Torts § 767 (1979); Carpenter, Interference with Contract Relations, 41 Harv.L.Rev. 728, 745 (1928).
 
 
 33
 The District Court in our case determined that the letters and actions of the defendants were "justified" as proper communication between management and an international organization. Local 472 acknowledges that the defendants had certain free speech rights, see Nager, 251 S.E.2d at 332, but argues that this is a case of overkill. Essentially, its argument is that since the defendants could have suggested less harsh means of dealing with the local, requesting a transfer of jurisdiction removes the privilege of free communication from the defendants.
 
 
 34
 In this case, each of the defendants had economic interests at stake. The United Association had an interest in maintaining good relationships with employers in the Macon area in order to protect the Macon job market for its membership.[3] Georgia Power Company and its representative, Mitchell, were interested in the successful completion of the Plant Scherer project. As contractors using union labor, Superior Contractors, Cleveland Consolidated, and representatives J. R. Cleveland and Lanier were concerned that Local 472's bargaining stance and past problems would affect their ability to competitively bid on jobs in the Macon area. The defendants expressed their concerns to each other, in writing to Local 472's international, and through testimony at the hearing conducted by the United Association. In our view, these were reasonable and proper actions. There must exist open lines of communication between labor and management. The free exchange of opinions, however harsh or one-sided, is essential to the smooth functioning of relations between labor and management. Here, Georgia Power Company and the contractors believed that Local 472 was unwilling or incapable of correcting its internal management problems. Their complaints to the international were an effort to alleviate difficulties at the local level; which, if unresolved, could have adversely affected all of the defendants. Such communications must be permitted and we hold that under federal common law they are privileged. As a matter of law, the letters and communications by the defendants do not establish the tort of interference with contractual or business relations.[4]
 
 IV. Duty of Fair Representation
 
 35
 Local 472 claims on appeal that summary judgment as to the United Association is inappropriate because "a jury could easily determine that Defendant United Association, by its agents, Ward and Blair, breached its duty to fairly represent the plaintiff." Brief of Appellant at 42. The complaint appears to allege this basis of liability. See Section I supra. We note that Local 472 did not pursue this claim in proceedings before the District Court. The local did not respond to the United Association's motion for summary judgment and, in fact, sought to drop the United Association and its representatives as parties.
 
 
 36
 We have reservations about the applicability of a duty of fair representation to an international's jurisdictional decisions, see Bass v. International Brotherhood of Boilermakers, 630 F.2d 1058, 1063 (5th Cir. 1980) (suggesting that duty of fair representation does not extend to purely internal union decisions), but, assuming arguendo that it attaches, we perceive nothing in this record to support the local's claim. Section 2 of the United Association's constitution gives the United Association plenary power over jurisdiction: "To the United Association ... is reserved the right to decide all matters pertaining to trade and territorial jurisdiction of its affiliated Local Unions, and no Local Union is conceded territorial jurisdiction other than the current working day in said territory...." Nevertheless, the United Association notified Local 472 that removal of part of the local's jurisdiction was under consideration and scheduled a hearing which was attended by representatives of the local. Mitchell, Cleveland, and Lanier testified at that hearing and were subject to cross-examination by the local. There is nothing in this record to indicate that the United Association's decision was "arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). We conclude that Local 472 has failed to establish any genuine issue of fact. Summary judgment in favor of the United Association and its representatives was appropriate.
 
 
 37
 In conclusion, the District Court's order granting summary judgment in favor of all defendants is AFFIRMED.
 
 
 
 [1]
 The complaint also alleges tortious interference with the agreement between Georgia Power Company and the local. Although this claim is not pressed on appeal, our holding, infra, would apply with equal force to it
 
 
 [2]
 Section 301(a) provides:
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 29 U.S.C. § 185(a) (1976).
 
 
 [3]
 Although the United Association and its representatives are named as co-conspirators with the other defendants, Section 301(b) precludes assessment of damages against individual union members. 29 U.S.C. § 185(b) (1976); Atkinson, 370 U.S. at 249, 82 S.Ct. at 1325. Thus, under the Labor-Management Relations Act, defendants Blair and Ward are insulated from liability for money damages
 
 
 [4]
 Since we hold that the communications by the defendants are privileged as a matter of law, the claim of conspiracy to interfere must also fail