**In re Scott Reynolds SULLIVAN, Debtor.**

**Bankruptcy No. 181–00024.**

United States Bankruptcy Court, C. D. Illinois.

June 1, 1981.

9. *Contra, In re Knabe, supra.*

Barry M. Barash, Galesburg, Ill., Judith S. Koffler, Pace University School of Law, White Plains, N.Y., Vern Countryman, Cambridge, Mass., for debtor.

Tyrone C. Fahner, Ill. Atty. Gen., Janice L. Cox, Asst. Atty. Gen., Springfield, Ill., Gerald D. Fines, U. S. Atty., Janet L. Jannusch, Asst. U. S. Atty., Peoria, Ill., for intervenors.

James S. Brannon, Peoria, Ill., trustee.

Scott Reynolds Sullivan, pro se.

## DECISION

### Statement of the Case

MAX J. LIPKIN, Bankruptcy Judge.

This matter comes on to be heard on the Motion for Judgment on the Pleadings filed by the Debtor. The Motion prays that the Court declare unconstitutional that portion of 11 U.S.C., Sec. 522(b) which permits states to prohibit their residents from using the Federal Exemptions provided in Sec. 522(d) of Title 11, U.S.C., generally referred to as the "opt out" clause.

On January 22, 1981, the Debtor filed a Petition for Relief pursuant to Chapter 7 of the Bankruptcy Reform Act of 1978. James S. Brannon was appointed Trustee.

The Debtor claimed property as Exempt pursuant to the provisions of 11 U.S.C. § 522(d) even though by an act of the Illinois Legislature, Public Act 81–1505, which was in effect prohibited residents of the State of Illinois from using the federal exemptions.

The Trustee filed an objection to the Claim of Exemptions.

The Illinois Attorney General was permitted to Intervene as was the Attorney General of the United States.

The Illinois Attorney General filed a pleading alleging that the public interest would greatly prejudiced if the contention that P.A. 81–1505 is unconstitutional is sustained. The pleading also requests the Court to Adjudge and Declare that P.A. 81–1505, as applied to the facts in the case is constitutional and that the Trustee's Objection to the Debtor's claim of exemption be sustained.

The United States of America, in its Motion to Intervene, alleges that 11 U.S.C. Sec. 522(b)(1) of the Code does not exceed Congress' power to establish "Uniform Laws" of Bankruptcy and does not unconstitutionally delegate Congress' law making power to the States.

The Motion for Judgment on the Pleadings alleges five (5) grounds of unconstitutionality. Four relate to Section 522(b) and one to P.A. 81–1505.

It alleges that P.A. 81–1505 frustrates the "fresh start" which pervades the Bankruptcy Code of 1978.

It alleges that permitting Illinois to "opt-out" of the federal exemptions is an unconstitutional attempt by Congress to establish a non-Uniform law on the subject of bankruptcy.

It alleges that 11 U.S.C. Sec. 522(b) unconstitutionally delegates congressional power to the states in violation of Article 1, Sec. 8, Cl. 4 of the U. S. Constitution.

It alleges that 11 U.S.C. Sec. 522(b) unconstitutionally authorizes the states to deny equal protection to the citizens of Illinois.

Finally it alleges that Sec. 522(b) permits the states to enact inconsistently unequal and unjust laws which control the rights of debtors.

### Discussion

█ The thrust of Debtor's entire argument is that as a result of the actions of Congress and the Illinois Legislature the Debtor is deprived of his "Fresh Start." It seems axiomatic that the determination of what is required by a Debtor for a "Fresh Start" is a legislative determination and not a Judicial one.

It was held in *Owens v. Green*, 400 Ill. 380 at 394, 81 N.E.2d 149 that the Courts

have no right to inquire into the wisdom of the legislature in the passage of an act within its legislative power.

Sec. 6 of the Bankruptcy Act of 1898 provides in pertinent part as follows:

"This Act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the laws of the United States or by the State laws in force at the time of the filing of the petition in the state wherein they have had their domicile for the six months immediately preceding the filing of the petition, or for a longer portion of such six months in any other state."

The Supreme Court of the United States in the case of *Hanover National Bank v. Moyses,* 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902) held that section constitutional. That case involved an action on a judgment. The Debtor had filed a voluntary petition in bankruptcy and had been granted a discharge. The judgment creditor charged that the Act was void because it violated the U.S. Constitution.

The Defendant filed a Demurrer which was sustained and the complaint was dismissed. The case was appealed to the U.S. Supreme Court which affirmed the judgment.

The thrust of the Complaint was that the Act violated Article 1, Sec. 8, paragraph 4 of the U. S. Constitution in that (a) it does not establish uniform laws in the subject of bankruptcies throughout the U. S., and (b) it delegates certain legislative powers to the several states in respect to bankruptcy proceedings. This is exactly the same argument being made in this case.

The Court stated that there was geographical uniformity, and not personal, and we do not think that the provisions of the Act of 1898 as to exemptions is incompatible with the rule (p. 189, 22 S.Ct. at 861).

The case quotes with approval from the opinion of Mr. Chief Justice Waite in the case of *In re Deckert,* 2 Hughes 186, where he said:

"The power to except from the operation of the law property liable to exception under the exemption laws of the several states, as they were actually enforced, was at one time questioned upon the ground that it was a violation of the constitutional requirement of Uniformity, but it has thus far been sustained for the reason that it was made a rule of law to subject to the payment of debts under its operation only such property as could by judicial process be made available for the same purpose * * *.

A rule which operates to this effect throughout the United States is uniform within the meaning of that term as used in the constitution."

In *Hanover* the Court also stated, at p. 190, that there was no attempt by Congress to unlawfully delegate its legislative power, citing *In re Rahner Petitioner,* 140 U.S. 545, 560, 11 S.Ct. 865, 868, 35 L.Ed. 572.

A later opinion of the U. S. Supreme Court reaffirmed the holding in *Hanover.* That was the case of *Stellwagon v. Clum,* 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507 (1918). At page 613, 38 S.Ct. at 217 of that opinion the court stated:

"Notwithstanding this requirement as to uniformity, the bankruptcy acts of Congress may recognize the laws of the State in certain particulars, although such recognition may lead to different results in different states. For example, the (old) Bankruptcy Act recognizes and enforces the laws of the states affecting dower, exemptions, the validity of mortgages, priorities of payment, and the like. Such recognition in the application of state laws does not affect the constitutionality of the Bankruptcy Act, although in these particulars the operation of the act is not alike in all the states."

"Where Congress finds a reason for variation, even the requirement of geographically uniform federal action can be relaxed. The Supreme Court so held in *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). In the Regional Rail Reorganization Act of 1973, ("Rail Act"), Congress established a reorganization procedure for railroads pursuant to the bankruptcy clause, but the statutes only

applied to the northeast and midwest regions of the country. In upholding the statute, the Court reasoned:

> The uniformity provision does not deny Congress power to take into account different parts of the country, and to fashion legislation to resolve geographically isolated problems. "The problem dealt with (under the Bankruptcy Clause) may present significant variations in different parts of the country."

419 U.S. at 159, 95 S.Ct. at 366, quoting *Wright v. Vinton Branch*, 300 U.S. 440, 463 n. 7, 57 S.Ct. 556, 562 n. 7, 81 L.Ed. 736 (1937) (Brandeis, J.)."

In a recent decision, the District Court for the Eastern District of Virginia upheld the constitutionality of Sec. 522 in the case of *In re Ragsdale*, 9 B.R. 991 (Bkrtcy.1981). In that case the Bankruptcy Judge denied the Debtor the benefits of the homestead deed exemption provided by the Virginia Code because her husband with whom she lived claimed this exemption. The Debtor challenged the constitutionality of Section 522 of Title 11, as an impermissible delegation of Congress' power to enact uniform bankruptcy laws. The Virginia Legislature utilized 11 U.S.C. Sec. 552(b)(1). The Debtor contended that the "opt-out" provision violates Article 1, Sec. 8, Clause 4 by creating non-uniform bankruptcy laws thereby creating an improper delegation of power.

The Court held the section constitutional based on the decision in *Hanover* and *Stellwagon* and stated:

> "Debtor attempts to distinguish cases upholding the predecessors of the current bankruptcy act on the grounds that the prior acts merely recognized, and left unchanged, state law exemptions, while the new act delegates certain exemption authority to states. In addition to undercutting debtor's 'absolute uniformity' argument, this distinction is untenable because state legislatures have concurrent legislative power to enact bankruptcy laws. *See Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 120, 195–196 [4 L.Ed. 529] (1819). Section 522 represents a limited exercise of Congress' power to enact bankruptcy laws.

Debtor's delegation challenge to § 522's opt out provision fails because Congress sufficiently defined the parameters within which state legislatures may act. *See, Schechter Poultry Corp. v. United States*, 295 U.S. 495, 530–31 [55 S.Ct. 837, 843, 79 L.Ed. 1570] (1935). In § 522 Congress specified the property which a debtor may exempt. Congress also allowed the states to fashion alternative exemption packages. By enacting the federal program, Congress created a standard against which the states may compose alternative exemption packages. Consequently, § 522(b)(1)'s opt out provision is not an impermissible delegation of Congress' legislative powers."

■ The opt-out provision in the Reform Act was a compromise between House and Senate bills. 124 Cong.Rec. H11095 (daily ed., Sept. 28, 1978) (remarks of Rep. Edwards). While the legislative history on this provision is scant, it is clear that the Senate wanted to retain the flexibility of state-by-state decisions on exemption. The allowance for variations in exemption laws under the Reform Act was Congress's response to varying national conditions. Indeed, to the extent the Reform Act affected uniformity, it improved it. Under the old Act, there was no national law of exemptions; under the Reform Act, the federal package, patterned after the Uniform Exemptions Act (*see* 123 Cong.Rec. E21 [(daily ed., Jan. 4, 1977) (remarks of Rep. Edwards)] predominates. Given the "flexibility inherent" in the bankruptcy clause, Congress has the power to fashion a compromise between a rigidly federal or a rigidly state exemption law.

### Debtor's Authorities

The authorities cited by Debtor are inapposite.

In *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) the Court held that Arizona's Motor Vehicle Safety Responsibility Act conflicted with the discharge provisions of the Bankruptcy Act and was invalid pursuant to the Supremacy clause of the Constitution.

*National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) involved the question of whether Congress in exercising its power under the Commerce Clause, had run afoul of the Tenth Amendment when it prescribed minimum wages and hours for state and local governmental employees.

*Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 119, 4 L.Ed. 529 (1819) is contrary to the position of the Debtor. In that case, Chief Justice John Marshall laid down the basic principles as follows:

"[T]he power granted to Congress may be exercised or declined, as the wisdom of that body shall decide. If, in the opinion of Congress, uniform laws concerning bankruptcies ought not to be established, it does not follow that partial laws may not exist, or that state legislation on the subject must cease. It is not the mere existence of the power, but its exercise, which is incompatible with the exercise of the same power by the states. It is not the right to establish these uniform laws, inconsistent with the partial acts of the states." 17 U.S. (4 Wheat.) at 195–96.

The *Head Money Cases*, 112 U.S. 580, 5 S.Ct. 247, 28 L.Ed. 798 (1884) involved a challenge to the validity of a federal law imposing certain taxes. The case involved Art. 1, Sec. 38, Cl. 1 of the Constitution that taxes and excises shall be uniform throughout the U. S. The court rejected the argument that the power being exercised was the taxing power, and held that Congress was actually exercising its authority to regulate commerce.

*Zschering v. Miller*, 389 U.S. 429, 443, 88 S.Ct. 664, 19 L.Ed.2d 683 (1968) involved an Oregon law which provides for escheat of probate estates where the heirs were residents of foreign countries. The question was whether the Oregon statute was an intrusion by the State into the field of foreign affairs which the Constitution entrusts to the President. The Court held that there was an unconstitutional infringement by the State into the Federal Domain.

This case is cited for the proposition that the power of Congress to establish bankruptcy exemptions is non-delegable.

*Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920) involved a provision of the Judiciary Act of 1789. Sec. 9 of that act granted to the U. S. District Courts "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, saving to suitors, in all cases, the right of a common law remedy where the common law is competent to give it."

In 1917 Congress amended the savings clause to add the following: "and to claimants the rights and remedies under the workmen's compensation law of any state."

The issue was whether the amendment constituted an unconstitutional delegation of Congress' power.

The Court by a vote of 5 to 4 held the law unconstitutional. In Justice Holmes dissenting opinion he stated, that Article III Sec. 2 of the Constitution did not, by implication, enact a whole Code for Master and servant at sea which could only be modified by a Constitutional Amendment. He also stated that the fact that the amendment to the Judiciary Act might have the result of making different rules for different places does not make it unconstitutional.

*Knickerbocker* by a later Supreme Court decision in *Askew v. American Waterways Operators Inc.*, 411 U.S. 325, 338 and 344, 93 S.Ct. 1590, 1598 and 1601, 36 L.Ed.2d 280 (1973) has been limited to the isolated instances where state law must yield to the needs of a uniform federal maritime law.

*Panama Refining Co. v. Ryan*, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935) involved the N.R.A. Section 9c of Title I of that Act provided that the President is authorized to prohibit the transportation in interstate commerce of petroleum produced in excess of the amount permitted by state law. This was held to be an unconstitutional delegation of Congress' legislative powers because Congress had declared no policy on the subject.

*United States v. Curtiss Wright Export Co.*, 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255 (1936) involved a Joint Resolution of Con-

gress which empowered the President to ban the sale of arms to certain South American Countries if he found such ban would "contribute to the reestablishment of peace between those countries." The President imposed such a ban, and as a defense to a resulting criminal prosecution the defendants argued that this involved an invalid delegation of legislative power. The court rejected the argument.

*Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954) involved a challenge to the validity of racial segregation in the District of Columbia Schools. This case was decided on the same day as *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873. Those cases held that the Equal Protection Clause of the 14th Amendment prohibited the *States* from maintaining racially segregated public schools.

As previously stated these cases are not pertinent to the issues in this case.

## CONCLUSION

The Court is of the opinion that Sec. 522(b)(1) of Title 11 U.S.C. is constitutional in all respects. The Court is also of the opinion that P.A. 81–1505 is also constitutional in all respects.