**In re J. Kenneth RHODES, Debtor.**

**J. Kenneth RHODES, Plaintiff,**

**v.**

**Larry STEWART, Trustee; the State of Tennessee; and the United States of America, Defendants.**

No. 380–03619.
Adv. No. 381–0170.

United States Bankruptcy Court,
M. D. Tennessee.

Sept. 22, 1981.

Harry D. Lewis, Nashville, Tenn., for plaintiff.

Larry Stewart, Nashville, Tenn., for trustee.

Margaret M. Huff, Asst. U. S. Atty., Nashville, Tenn., for United States.

Kate Eyler, Asst. Atty. Gen., Nashville, Tenn., for the State of Tenn.

MEMORANDUM

RUSSELL H. HIPPE, Jr., Bankruptcy Judge.

This matter is before the court on the complaint of a debtor attacking the efficacy of legislation enacted by the Tennessee General Assembly denying residents of this state the right to claim the federal bankruptcy exemptions provided by 11 U.S.C. § 522(d). The pertinent provision of the Bankruptcy Reform Act of 1978 which ap-

pears to grant the states such authority is contained in subsection (b) of 11 U.S.C. § 522 which provides in its entirety:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either—

(1) property that is specified under subsection (d) of this section, *unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize;*

(2)(A) any property that is exempt under Federal Law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; and

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

11 U.S.C. § 522(b) (1979) [emphasis added].

In the spring of 1980 the Tennessee General Assembly enacted Public Chapter No. 919 which extensively amended the Tennessee exemption statutes and included the following new provision:

SECTION 4. Tennessee Code Annotated, Title 26, as amended, relating to execution, exempt personal property, homestead and real property exemptions, and other related subjects, be and the same is hereby amended by adding at the end of said Title 26, Tennessee Code Annotated, a new Chapter 9 to read as follows:

Chapter 9. Exemptions for bankruptcy. Section 26–901 [now § 26–2–112]. Exemptions for the purpose of bankruptcy. The personal property exemptions as provided for in Chapter 2,

Title 26, Tennessee Code Annotated, and the other exemptions as provided in other sections of the Tennessee Code Annotated for the citizens of Tennessee, are hereby declared adequate and the citizens of Tennessee, pursuant to Section 522(b)(1), Public Law 95–598 known as the Bankruptcy Reform Act of 1978, Title 11 USC, Section 522(b)(1), are not authorized to claim as exempt the property described in the Bankruptcy Reform Act of 1978, Title 11, USC 522(d).

The state's exemption statutes were recodified in 1980 as §§ 26–2–101, *et seq.*, of the Tennessee Code.

The sole issue to be resolved by this court in this proceeding is whether the above-quoted § 26–2–112 should be given effect in bankruptcy cases.

The debtor filed a voluntary petition for relief under Chapter 7 of Title 11 on November 28, 1980. On his schedule B–4 he claimed exemptions pursuant to 11 U.S.C. § 522(d) in approximately $4,000 worth of various items of personal property. He also claimed as exempt an interest in a Florida vacation condominium with a value of approximately $4,000. Under the Tennessee exemption statutes the only interest in real property which a debtor is entitled to claim as exempt is a $5,000 ($7,500 for married couples) homestead in his principal residence. Tenn.Code Ann. §§ 26–2–301, *et seq.* Even if the interest in the condominium is classified as personalty, the debtor is still unable to exempt it under Tennessee law since he has already exhausted the $4,000 available under the only personal property exemption provision which might be relevant, § 26–2–102. If the federal bankruptcy exemption provided by 11 U.S.C. § 522(d) is available to the debtor, he would be able to exempt his interest in the condominium, regardless of how classified, as well as his interests in the other property claimed as exempt.

In subsection 522(b) Congress initially authorized debtors to claim exemptions either under subsection 522(d), the federal bankruptcy exemption, or under nonbankruptcy

law. In his amended complaint the debtor insists that this choice is still available to him, arguing that the "opt-out" provision as exercised by the Tennessee legislature violates certain provisions of the United States and Tennessee constitutions.

The defendants are the trustee, the United States of America, and the State of Tennessee. All three insist that § 26–2–112 of the Tennessee Code is valid and effective.

The most significant of the constitutional issues which have been raised is whether the "opt-out" authority granted to the states constitutes a delegation of congressional authority which is impermissible under the bankruptcy clause of Article I, Section 8 of the U.S. Constitution and the supremacy clause of Article VI of that document.

The defendants have responded in part by urging that the "opt-out" provision is but another recognition by the Congress of the concurrent power of the states to enact legislation dealing with bankruptcy matters unless preempted by federal law. The court is of the opinion, however, that this position is untenable since in the exemption section of the Reform Act, 11 U.S.C. § 522, Congress has provided a highly detailed scheme of bankruptcy exemptions. That section has thirteen subsections, one of which itself has eleven subsections. Congress clearly has preempted state law with regard to the exemption of property interests in bankruptcy cases as the Fourth Circuit Court of Appeals has held in a pertinent recent decision, *Cheeseman v. Nachman*, 656 F.2d 60 (4th Cir. 1981). Thus, in the "opt-out" provision Congress must be deemed to have delegated authority to the states which it may do only if it defines the limits within which the states can exercise that authority. *E. g., Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935).

Because the defendants have relied heavily on a decision by the United States Supreme Court rejecting a similar attack on the constitutionality of the exemption provisions of the Bankruptcy Act of 1898, as amended, which limited a bankrupt's exemptions to those available under nonbankruptcy law, a brief review of the pertinent provisions of that Act is an appropriate starting point for a discussion of the delegation issue.

The basic approach taken by the Congress in that Act to the composition of the bankruptcy estate was to provide the trustee the same interest in the bankrupt's property as a levying judgment creditor. Thus, in § 70 of that Act Congress vested in the trustee title to the bankrupt's property "which might have been levied upon and sold under judicial process." Former 11 U.S.C. § 110(a)(5). State law normally determines what property interests are subject to judicial process and thus what property was included in the bankrupt's estate. *E. g., Cesner v. Schmelzer*, 480 F.2d 1074 (6th Cir. 1973). The provision in the prior law, former 11 U.S.C. § 24, which permitted a bankrupt to exempt only property prescribed by nonbankruptcy law—generally by state exemption statutes—merely carried through with that basic approach. The Supreme Court expressly recognized this relationship between the scope of the estate and the exemptions provision in the case relied upon by the defendants, *Hanover National Bank v. Moyses*, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902). Thus, the court made short shrift of the plaintiff's delegation argument.

Under the prior law certain significant property interests of bankrupts did not pass to the trustee, not because they were exempt, but because they were not subject to judicial process under state law. Personal injury claims, for example, generally are not subject to judicial process under state law and thus did not pass into the bankruptcy estate. *E. g., Cesner v. Schmelzer, supra; In re Anderson*, 345 F.Supp. 840 (E.D.Tenn.1972), *aff'd.* 474 F.2d 1398 (6th Cir. 1973). Alimony payable *in futuro* was not considered to be a leviable interest under state law and accordingly did not pass into the estate. *Waldschmidt v. Houghland*, 20 C.B.C. 1032 (M.D.Tenn.1979) (B.J.).

Obviously dissatisfied with this approach to the composition of the estate, Congress took a fundamentally different approach in the 1978 Reform Act. In one of the more significant departures from the prior Act, Congress established a new, expanded estate comprised of "all legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a)(1) (1979). It was the intent of Congress to give the new estate a broad scope. H.R.Rep.No.95–595, 95th Cong., 1st Sess. 367–68 (1977); S.Rep.No.95–989, 95th Cong., 2d Sess. 82–3 (1978), U.S.Code Cong. & Admin.News 1978, 5787. As a result, personal injury causes of action now pass to the trustee as do rights to receive alimony *in futuro.*

Because this new estate includes interests that are not leviable under state law, state exemption laws no longer have the relevance that they did under the prior Act. Property interests immune from process generally are not covered by state exemption statutes which need exempt from execution only property subject to execution.

The decision to expand the estate necessitated enactment of a comprehensive bankruptcy exemption scheme especially tailored to complement the new bankruptcy estate. Congress provided just such a scheme in the lengthy and detailed § 522. In addition to providing for the exemption of types of property interests traditionally exempted by state statutes—such as wearing apparel and household furnishings—Congress provided exemptions for such property interests as the right to receive alimony and the right to receive payments on account of personal injury. 11 U.S.C. § 522(d) (1979).

Although state exemptions no longer have the relevance that they had under the old Act, to ensure that debtors were not deprived of the benefit of a state exemption which might be more advantageous to them in their particular circumstance than the exemptions provided by § 522(d) Congress granted debtors the option of exempting property under nonbankruptcy law. In addition, Congress included in this option a provision relative to property owned as tenants by the entirety which enabled a married debtor to also exempt his or her interest in entireties property to the extent it was immune from process under nonbankruptcy law.[1]

The legislative history of the Reform Act's exemption provisions is found in the reports of the House since the original Senate version carried forward the 1898 Act limitation to nonbankruptcy law exemptions. It is apparent from the following excerpt from the pertinent House report that although the expanded estate necessitated Congressional enactment of a comprehensive scheme of federal bankruptcy exemptions, dissatisfaction with state exemption statutes was also a motivating factor:

> However, some State exemption laws have not been revised in this century. Most are outmoded, designed for more rural times, and hopelessly inadequate to serve the needs of and provide a fresh start for modern urban debtors. The historical purpose of these exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge. The purpose has not changed, but neither have the level of exemptions in many States. Thus, the purpose has largely been defeated.
>
> Though exemption laws have been considered within the province of State law under the current Bankruptcy Act, H.R. 8200 adopts the position that there is a Federal interest in seeing that a debtor that goes through bankruptcy comes out with adequate possessions to begin his fresh start. Recognizing, however, the circumstances do vary in different parts

---

1. Congress used "exempt," not "immune," from process but since such interests in entireties property are not leviable, they are not included in state exemption statutes. To give appropriate meaning to 11 U.S.C. § 522(b)(2)(B) the judges of the Bankruptcy Court for the Maryland district held that Congress intended "immune" rather than "exempt." *In re Ford,* 3 B.R. 559 (Bkrtcy., D.Md. 1980), aff'd., 638 F.2d 14 (4th Cir. 1981). This court applied this construction in *Waldschmidt v. Shaw,* 5 B.R. 107 (Bkrtcy., M.D.Tenn.1980).

of the country, the bill permits the States to set exemption levels appropriate to the locale, and allows debtors to choose between the State exemptions and the Federal exemptions provided in the bill. Thus, the bill continues to recognize the States' interest in regulating credit within the States, but enunciates a bankruptcy policy favoring a fresh start.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 126, *reprinted in* [1978] U.S.Code Cong. & Ad.News 5963, 6087.

The "opt-out" provision was a last-minute compromise between the Senate and House versions and there apparently is no legislative history available to aid in its construction.

The defendants argue that Congress enacted this provision with the intention of enabling the states to set exemption levels for their citizens in bankruptcy cases at lower levels than provided in § 522(d) in recognition of the fact that economic conditions and thus the amounts required for an effective fresh start vary from one geographic region to another. Even if we assume that this proposition is sound both as to the construction of this statutory provision and its constitutionality, Congress obviously did not intend, and, in any event, was constitutionally prohibited from, delegating unfettered authority to the states to regulate bankruptcy exemptions. To do so would enable the states to totally frustrate the fresh start of many debtors. If, for example, states fail to provide exemptions for such property interests as tort claims and alimony they would effectively deny to debtors with significant rights to such property interests the filing of a bankruptcy petition as a viable means of dealing with their debts.

In the recent Fourth Circuit Court of Appeals opinion cited above, that court held in effect that Congress has placed appropriate limitations on the "opt-out" authority granted the states. In that case the court had under consideration whether both debtors in a joint case could claim the exemptions available to a householder under Virginia exemption statutes, that state having

exercised its "opt-out" rights, in light of the provision in subsection 522(m) that § 522 "shall apply separately with regard to each debtor in a joint case." After first construing the Virginia exemption statutes as granting both debtors the right to claim the exemption, the court stated:

This construction is also mandated by section 522(m) of the Act. Because Congress has the power under the Constitution to establish uniform bankruptcy laws, U.S.Const. art. 1, § 8, and has enacted a specific provision for exemptions, 11 U.S.C. § 522, we must adopt an interpretation of Virginia's law that does not conflict with the Act's exemption provision. *See International Shoe Co. v. Pinkus*, 278 U.S. 261, 263–64 [49 S.Ct. 108, 109–110, 73 L.Ed. 318] (1929).

In developing the Act's exemption law, Congress observed that under prior law exemptions had been determined by reference to state laws which had become so outdated in many instances that they were "hopelessly inadequate to serve the needs of and provide a fresh start for modern urban debtors." H.R. Rep. No. 595, 95th Cong., 1st Sess. 126 (1977), *reprinted in* [1978] U.S.Code Cong. & Ad. News 5963, 6087. Congress recognized a federal interest in ensuring that a debtor going through bankruptcy retain sufficient possessions to begin anew—to have a fresh start. *Id.* Thus, federal exemptions became part of the Act, but state exemptions were also retained, so that exemption levels could be set at a level commensurate with the standard of living in various parts of the country. In retaining the state exemption, Congress noted:

Recognizing ... the circumstances do vary in different parts of the country, the bill permits the States to set exemption *levels* appropriate to the locale, and allows debtors to choose between the State and the Federal exemptions provided in the bill. Thus, the bill continues to recognize the States' interest in regulating credit within the States, but enunciates a

bankruptcy policy favoring a fresh start.

*Id.* (footnotes omitted) (emphasis added).

Congress also emphasized that, in a joint case, "*each* debtor is entitled to the Federal exemptions provided under this section or to the State exemptions, whichever the debtor chooses." *Id.* at 363, reprinted in [1978] U.S.Code Cong. & Ad. News, 6319 (emphasis added).

It does not follow, however, that the states should be left free to classify which bankrupt debtors should be entitled to exemptions when the classification *conflicts with federal law.* If we were to permit a construction of Virginia law that allows only one householder per residence, the construction would be inconsistent with section 522(m) of the Act, which we interpret as allowing each debtor in a joint case to take some exemptions, whether the *amount* is determined by state or federal law.

*Cheeseman v. Nachman,* 656 F.2d 60 (4th Cir. 1981). (Emphasis added.)[2]

The Fourth Circuit has held, in effect, that the delegation of authority to the states to "opt-out" has been carefully circumscribed and the states may exercise that authority only if they provide their citizens with a scheme of bankruptcy exemptions that is not inconsistent with the provisions of § 522.

One of the major policy considerations reflected in the exemptions of § 522(d), as recently noted by the Seventh Circuit Court of Appeals, is to ensure that there is no discrimination between homeowners and non-homeowners.

Congress found that "there is a Federal interest in seeing that a debtor that [sic] goes through bankruptcy comes out with adequate possessions to begin his fresh start." The general exemption was intended to ensure that there was no discrimination between homeowners and non-homeowners in achieving that goal. By permitting non-homeowners (or homeowners with property valued under $7,500) to exempt the unused portion of the homestead exemption, plus $400, Congress in effect gave all debtors potentially the same $7,900 stake.

*In re Smith,* 640 F.2d 888, 891 (7th Cir. 1981) (footnotes omitted).

The federal bankruptcy exemption provisions referred to by the Seventh Circuit are subsections (1) and (5) of § 522(d), the same subsections invoked by the debtor in this case. In enacting these provisions Congress rejected the antiquated homestead exemptions which many states provide homeowners with no corresponding relief for non-homeowners.

For a state to effectively opt its citizens out of § 522(d) it must provide a scheme of exemptions which is consistent with this policy. In enacting Public Chapter No. 919 in 1980, the Tennessee General Assembly failed to do so. Rather it perpetrated the antiquated discrimination in favor of homeowners by providing a homestead exemption with no comparable exemption for non-homeowners. Thus, a homeowner with $5,000 equity in his or her home is provided a fresher start than homeowners with a lesser equity interest or non-homeowners such as the debtor in this proceeding.

The court cannot perceive of a way to construe the Tennessee exemption statutes so as to avoid the conflict with this federal standard as the Fourth Circuit was able to do with the Virginia exemption statutes.

Accordingly the court is of the opinion that in enacting § 26–2–112 of the Tennessee Code the General Assembly exceeded whatever authority that may have been

---

2. The defendants have cited two cases by other courts addressing the issue before the court in this proceeding. On September 2, 1981, the Fourth Circuit reversed one of those decisions, that of the district court in *In re Ragsdale,* 9 B.R. 991 (Bkrtcy.E.D.Va.1981), citing its opinion in *Cheeseman v. Nachman, supra.* The other case is that of a bankruptcy court in Illinois, *In re Sullivan,* 11 B.R. 432 (Bkrtcy.C.D. Ill.1981). That court relied upon *Ragsdale* in sustaining the efficacy of the Illinois "opt-out" statute even though Illinois exemption statutes continue to discriminate against non-homeowners. In light of the decision in *Cheeseman v. Nachman,* it appears that *Sullivan* may have been wrongly decided.

granted it in 11 U.S.C. § 522(b)(1) since the scheme of exemptions provided the citizens of this state by §§ 26–2–101, *et seq.*, conflicts with the standards established by 11 U.S.C. § 522.

Section 26–2–112 of the Tennessee Code is invalid. Residents of this state continue to have the option of exempting property from their bankruptcy estates pursuant to 11 U.S.C. § 522(d).

An appropriate order will be entered awarding to the debtor as property exempted from the estate pursuant to 11 U.S.C. § 522(d) all property interests listed in his Schedule B–4.