**In re OCEAN DEVELOPMENTS OF AMERICA, INC., and Silvio de Lindegg, Debtors.**

**Daniel BAKST, Trustee, Plaintiff,**

v.

**Adela Alicia SCARPA and Sunrise Savings & Loan Association of Florida, Defendants.**

**Bankruptcy Nos. 82–00757–BKC–TCB, 82–00758–BKC–TCB. Adv. No. 82–0568–BKC–TCB–A.**

United States Bankruptcy Court, S. D. Florida

Aug. 25, 1982.

W. John Gundlach, Jr., Fort Lauderdale, Fla., for Trustee.

Daniel Bakst, West Palm Beach, Fla., Trustee.

Charles Faegre, Wayzata, Minn., for Scarpa.

Ian M. Comisky, West Palm Beach, Fla., for Sunrise Sav. & Loan Assn.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

The trustee seeks recovery for the fraudulent transfer of a half-interest in a house to the defendant Scarpa and the avoidance, as fraudulent, of a subsequent mortgage given by Scarpa to the defendant Sunrise. (C.P. No. 15). Sunrise has answered and cross-claimed against Scarpa. (C.P. No. 38). Scarpa, who was served, did not answer nor appear at trial except through an attorney. The matter was tried on August 3.

A threshold issue is presented by Sunrise's motion to dismiss relying upon *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). During argument, the parties agreed that the Supreme Court's stay of judgment in that case confirms this court's jurisdiction to adjudicate these issues at least until October 4, 1982. Only acts of this court after that date are dependent upon future remedial action by Congress.

The Court said:

"The judgment of the District Court is affirmed. [*Marathon Pipeline Company v. Northern Pipeline Construction Co.*] 12 B.R. 946 [D.C. 1981]. However, we stay our judgment until October 4, 1982. This limited stay will afford Congress an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws."

Unless the effect of this stay is to confirm the exercise of this court's jurisdiction at least until October 4, 1982, every interim act of the Bankruptcy Court would be suspect and subject to jurisdictional challenge after October 4. This would inevitably produce the very impairment of interim administration which the Court was at pains to avoid.

The motion to dismiss is denied.

██ The property is a Palm Beach mansion. It was purchased in December, 1981 for $975,000 by the debtor de Lindegg with funds from his wholly owned corporation, the corporate debtor. Title was taken as tenants in common in the joint names of de Lindegg and Scarpa, who lived with him. She comes from one of the richest families in Brazil. The corporate debtor was de Lindegg's alter ego and it may prove impracticable to unravel the commingled assets and debts of the two debtors.

De Lindegg conveyed his half interest in the property to Scarpa on March 19, 1982 five weeks before an involuntary petition was filed against the two debtors. The transfer was for the assumption of de Lindegg's share of the existing mortgage ($382,700) and $111,120 in cash or a total of $493,820. The purported consideration represents 65 percent of the then actual market value of the property interest, one half of $1.5 million. Each of the debtors was insolvent at the time of the transfer or became insolvent as a result of the transfer.

In *Durrett v. Washington National Insurance Co.*, 5 Cir. 1980, 621 F.2d 201, 203, the Court noted that:

"We have been unable to locate a decision of any district or appellate court dealing only with a transfer of real property as the subject of attack under section 67(d) of the Act, which has approved the transfer for less than 70 percent of the market value of the property."

The operative provisions of § 548(a)(2), controlling in our case, are indistinguishable from those of the former Act which governed *Durrett*.

The trustee has, therefore, established each of the elements of a constructive fraudulent transfer under § 548(a)(2)(A) and (B)(i) with respect to the conveyance to Scarpa.

I also find that the trustee has proved that the transfer was made with actual intent to defraud the debtors' creditors and is, therefore, void under § 548(a)(1). Scarpa, knowing of the debtors' imminent collapse and with prompting by her then attorney, Wearn, arranged to get de Lindegg's name out of the title and arranged to get back immediately the $111,120 cash she pretended to have paid de Lindegg. She did so by giving the cash to a friendly unknown imposter immediately after the closing. De Lindegg's signed receipt had been left with Wearn. De Lindegg fled the country six days later. They are probably together now in Brazil.

In short, the transfer to Scarpa on March 19 is as clearly fraudulent as one is ever likely to see. There is, therefore, no point in considering the trustee's alternative charge that the transfer was a voidable preference. In reaching the foregoing and following factual findings I have believed the witnesses Bryant, Zammit,[1] Encizo and Jacoby. Where the testimony of Robinson and Wearn conflicts, I believe they have lied.

We turn to the action against Sunrise. It is undisputed that Sunrise paid $750,000 in consideration of Scarpa's note and mortgage in that sum on April 6. The proceeds were entirely used to discharge the existing mortgage then in default. Scarpa contributed an additional $68,481. It is alleged that Sunrise did so with knowledge of and in furtherance of the fraud summarized above. I disagree.

I find that Sunrise's personnel, with the exception of Robinson, an outside director, had no knowledge of the fraud or any circumstances which should have excited suspicion. Both de Lindegg and Scarpa had impeccable references and had the outward appearance of royalty. They were introduced to Sunrise by Robinson, who immediately withdrew from all further consideration of the loan. Scarpa's references and the value of the property provided such adequate security, Sunrise did not need de Lindegg's joinder on the note.

Robinson is a real estate broker who has been a personal friend of both de Lindegg and Scarpa for two years. He sold the house to them. He introduced Scarpa to her attorney, Wearn. His office was in the same building occupied by the debtors. He proposed the purchase price for the fraudulent transfer. He knew of the debtors' acute financial distress at least a month before the mortgage closing. He knew of the March 19 transfer.

I attach no credibility to Robinson's testimony. However, there is no evidence that

---

1. I do not believe, however, Zammit's affidavit prepared and submitted after trial. In any event, that affidavit is not properly before me.

he knew or should have suspected that Scarpa never paid the $111,120 to de Lindegg. Without that knowledge, he did not know there was actual fraud. As a broker, he must have known the price was below market, but I do not believe he knew it was only 65 percent of market and therefore constructively fraudulent. The precise market value of this property on March 19 is not that obvious.

Secondly, there is no evidence before me that Robinson (or Sunrise) had any actual intent to defraud the debtors' creditors when they closed their mortgage. The fact that Sunrise waived de Lindegg's signature on the note, though consistent with the trustee's allegation, falls far short of proving it under the circumstances present here. Even if Robinson's knowledge and intent is imputed to Sunrise, therefore, there is no basis to avoid the Sunrise mortgage under § 548(a).

█ Furthermore, Robinson's knowledge and intent may not be imputed to Sunrise in this instance. As an outside director, not acting for Sunrise in this transaction, he was not its agent. Restatement (Second) of Agency, § 14C (1958). As stated in Fletcher, 3 *Cyclopedia of Corporations* (Perm. Ed.). § 808:

> "By the great weight of authority, however, since the directors do not individually represent the corporation, and have no power to bind it, except collectively and as a board, *notice of facts casually acquired by individual directors, when they do not communicate to the other directors or officers, and do not act officially in the matter, is notice to the corporation.* (emphasis added)."

Of course, this decision renders Sunrise's cross-claim moot. It follows that the amended complaint will be dismissed as to Sunrise.

As is required by B.R. 921(a), a separate judgment will be entered declaring the conveyance by de Lindegg to the defendant Scarpa on March 19, 1982 (recorded March 26, 1982, in the Public Records of Palm Beach County, B3697 P0496) is fraudulent under § 548(a) and is void. The amended

complaint will, however, be dismissed with prejudice as to the defendant Sunrise. Costs will be taxed on motion.