KRUPANSKY, Circuit Judge.
 

 This is a direct appeal, pursuant to 28 U.S.C. § 1293(b), from a judgment of the Bankruptcy Court for the Middle District of Tennessee declaring “invalid” Tennessee’s “opt-out” statute, T.C.A. § 26-2-112.
 
 Rhodes v. Stewart,
 
 14 B.R. 629 (Bkrtcy.M.D.Tenn.1981). Confronting the polestar issue of the jurisdiction of a bankruptcy court to exercise the judicial power of an Article III court, it is initially noted that Section 241(a) of the Bankruptcy Reform Act of 1978 (Act), Pub.L. No. 95-598, 28 U.S.C. § 1471, which grants to bankruptcy courts jurisdiction over all “civil proceedings arising under title 11 or arising in or related to cases under title 11”, was adjudged “unconstitutional” by Justices Brennan, Marshall, Blackmun and Stevens in
 
 Northern Pipeline Construction Company v. Marathon Pipe Line Company,
 
 —- U.S. -, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Although in
 
 Northern
 
 the Court was confronted with the bankruptcy court’s jurisdiction to entertain only one type of civil proceeding “arising in or related to” a bankruptcy case, to wit, a breach of contract and warranty complaint predicated upon state law, the permissible and impermissible exercises of jurisdiction under § 1471 were deemed nonsev-erable and the broad jurisdictional grant of § 1471 was declared unconstitutional in its entirety. Justice Brennan stated:
 

 [W]e cannot conclude that if Congress were aware that the grant of jurisdiction could not constitutionally encompass this and similar claims, it would simply re» move the jurisdiction of the bankruptcy court over these matters, leaving the jurisdictional provision and adjudicatory structure intact with respect to other types of claims, and thus subject to Art. Ill constitutional challenge on a claim-by-claim basis. * * * We think that it is for Congress to determine the proper manner of restructuring the Bankruptcy Act of 1978 to conform to the requirements of Art. Ill, in the way that will best effectuate the legislative purpose.
 

 - U.S. at -, 102 S.Ct. at 2880, note 40. Justice Rehnquist, with whom Justice O’Connor joined, concluded that only “so much of the Bankruptcy Act of 1978 as enables a Bankruptcy Court to entertain and decide Northern’s lawsuit over Marathon’s objection to be violative of Art. Ill”, - U.S. at -, 102 S.Ct. at 2882, but concurred in the judgment since “this grant of authority is not readily severable from the remaining grant of authority to Bankruptcy Courts under § 241(a)”.
 
 Id.
 
 Accordingly, a plurality of six justices concluded that the jurisdictional grant of § 1471 was unconstitutional
 
 in toto
 
 and could not be redeemed through division or severance of offending exércises of jurisdiction.
 
 See also: In re Cumberland Enterprises, Inc.,
 
 22 B.R. 626, 631 (Bkrtcy.M.D.Tenn.1982);
 
 In re Otero Mills, Inc.,
 
 21 B.R. 645, 647 (Bkrtcy.D.N.M.1982);
 
 In re Cherry Pond Coal Co.,
 
 21 B.R. 592, 593 (S.D.W.Va.1982).
 

 The plurality further declared that “our decision today shall apply only prospectively”, - U.S. at -, 102 S.Ct. at 2880, and thereupon stayed execution of the judgment, entered on June 28, 1982, until October 4, 1982.
 
 Id.
 
 The stay of execution was subsequently extended until December 24, 1982.
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line Company,
 
 - U.S. -, 103 S.Ct. 199, 74 L.Ed.2d 160 (1982). Prospective application of
 
 Northern
 
 mandates, at a minimum, that all bankruptcy court entries of judgment prior to June
 
 *161
 
 28, 1982,
 
 [1]
 
 as predicated upon § 1471 jurisdiction, are to be afforded
 
 de facto
 
 validity. In
 
 United States v. Security Industrial Bank,
 
 - U.S. -, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) the Supreme Court addressed the merits of a decision entered by the Tenth Circuit wherein consolidated dispositions issued in 1980 by bankruptcy courts were reviewed. Although the underlying bankruptcy decisions, as in the case at bar, entertained the constitutionality of legislation, such exercises of jurisdiction were not retroactively subjected to the jurisdictional pronouncements of
 
 Northern:
 

 Appellee Beneficial Finance of Kansas, Inc. asserts that the judgments should be affirmed because the Act violates Article III of the Constitution by granting judicial power to non-Article III bankruptcy judges.
 
 See Northern Pipeline Construction Co. v. Marathon Pipe Line
 
 Co.,U.S. -, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality opinion of Brennan, J.);
 
 id.,
 
 at -, 102 S.Ct. at 2882 (Rehnquist, J., concurring in the judgment). Because our decision in
 
 Northern Pipeline
 
 is prospective only,
 
 id.,
 
 at -, 102 S.Ct. 288[o] [sic], and because we have stayed the issuance of our mandate in that case to December 24, 1982, - U.S. -, 103 S.Ct. [199] [sic], 74 L.Ed.2d 160, that decision does not affect the judgment in this case.
 

 - U.S. at -, 103 S.Ct. at 410, note 5. Accordingly, the bankruptcy court decision in the case at bar, as resulting from § 1471 jurisdiction, entered on September 22,1981, is to be afforded
 
 de facto
 
 bankruptcy jurisdictional validity upon appellate review.
 

 The pertinent substantive inquiry on appeal is the constitutionality of Tennessee’s opt-out statute, T.C.A. § 26-2-112. The Bankruptcy Reform Act of 1978, 11 U.S.C. § 101
 
 et seq.,
 
 created an express enumeration of exemptions from the bankruptcy estate. 11 U.S.C. § 522(d). Included within this federal exemption scheme is the following “homestead” exemption:
 

 (1) The debtor’s aggregate interest, not to exceed
 
 $7,500
 
 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a
 
 residence,
 
 in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor, (emphasis added)
 

 11 U.S.C. § 522(d)(1). Congress, however, further vested in the states the authority to “opt out” of the federal exemption scheme:
 
 *162
 
 11 U.S.C. § 522(b)(1) (emphasis added). Tennessee, and a significant number of other states,
 
 [2]
 
 have rejected or opted-out of the federal exemption scheme embodied in 11 U.S.C. § 522(d):
 

 
 *161
 
 (b) Notwithstanding section 541 [which defines property of the estate] of this title, an individual debtor may exempt from property of the estate either—
 

 (1) property that is specified under subsection (d) of this section,
 
 unless
 
 the State law that is applicable to the debt- or under paragraph (2)(A) of this subsection specifically does not so authorize.
 

 
 *162
 
 § 26-2-112.
 
 Exemptions for the purpose of bankruptcy
 
 The personal property exemptions as provided for in this part, and the other exemptions as provided in other sections of the Tennessee Code Annotated for the citizens of Tennessee, are hereby declared adequate and the citizens of Tennessee, pursuant to section 522(b)(1), Public Law 95-598 known as the Bankruptcy Reform Act of 1978, Title 11 USC, section 522(b)(1), are not authorized to claim as exempt the property described in the Bankruptcy Reform Act of 1978, 11 U.S.C. 522(d).
 

 T.C.A. § 26-2-112. At least a section of Tennessee’s statutory exemption provisions are less beneficial to a debtor than those permitted in the federal exemption provision. In particular, T.C.A. § 26-2-301 establishes the following homestead exemption:
 

 § 26-2-301.
 
 Basic Exemption
 
 (a) An individual, regardless of whether he is head of a family, shall be entitled to a homestead exemption upon real property, which is owned by the individual and used by him, his spouse, or a dependent, as a
 
 principal place of residence.
 
 The aggregate value of such homestead exemption shall not exceed
 
 five thousand
 
 dollars ($5,000). (emphasis added)
 

 Tennessee’s homestead exemption is less beneficial to a debtor than its federal counterpart in terms of the value of the exemption ($5,000 versus $7,500) and in terms of restrictions; a Tennessee debtor may only exempt the homestead used “as a principal place of residence” whereas the debtor authorized to utilize the federal homestead exemption may exempt that used “as a residence”.
 

 Kenneth Rhodes (Rhodes) filed a voluntary Chapter 7 petition in bankruptcy and sought to rely upon the federal exemption scheme embodied in 11 U.S.C. § 522(d) to exempt all unencumbered real property including a 6/365 interval time-sharing ownership interest in a condominium located in Florida for which a purchase price of $3,800 had been paid. Since the condominium was not his principal place of residence, it was not exempted under Tennessee’s homestead provision, T.C.A. § 26-2-301, although it would have been exempt were Rhodes permitted to apply the federal exemption. The trustee in bankruptcy petitioned the bankruptcy court to apply the more restrictive exemptions of Tennessee bankruptcy statutes since Tennessee had opted-out of the federal exemption scheme as permitted by 11 U.S.C. § 522(b)(1). The bankruptcy court declared Tennessee’s opt-out statute “invalid” and permitted Rhodes to utilize the federal exemption. This appeal ensued.
 

 Congressional authority to enact uniform bankruptcy laws is derivative of Article 1, § 8, cl. 4 of the United States Constitution which gives to Congress power “To establish ... uniform Laws on the subject of Bankruptcies throughout the United States” (Bankruptcy Clause). The Supreme Court has pronounced that the Bankruptcy Clause requires only geographical rather than personal uniformity.
 
 Hanover National Bank v. Moyses,
 
 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902).
 
 See also: Stellwagen v. Glum,
 
 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507 (1918). This Court concludes that 11 U.S.C. § 552(b)(1), which authorizes states to opt-out of the federal exemption scheme allowing the states to elect differing exemption structures, is an exercise of the legislative prerogative to establish a “uniform law” and therefore falls within that scope of authority provided to Congress in the Bankruptcy Clause.
 
 Accord: In re Sullivan,
 
 680 F.2d 1131 (7th Cir.1982) (detailed and well-reasoned opinion);
 
 In re Lausch,
 
 16 B.R. 162 (M.D.Fla.
 
 *163
 
 1981);
 
 In re Ambrose,
 
 4 B.R. 395 (Bkrtcy.M.D.Ohio 1980);
 
 In re Curry,
 
 5 B.R. 282 (Bkrtcy.N.D.Ohio 1980).
 
 See also: In re Morgan,
 
 689 F.2d 471 (4th Cir.1982) (acknowledging validity of state exemption provisions without expressly addressing violation of Bankruptcy Clause). To the extent that the bankruptcy judgment in the action
 
 sub judice
 
 is predicated upon the proposition that T.C.A. § 26-2-112 is “invalid” as an impermissible delegation of Congressional legislative authority resulting in non-uniform state laws and therefore violative of the Bankruptcy Clause, such judgment must be reversed.
 
 [3]
 

 The bankruptcy court reasoned that “Congress clearly has preempted state law with regard to the exemption of property interests in bankruptcy cases”. 14 B.R. at 631. Contrasting the “lengthy and detailed” federal exemption scheme embodied in 11 U.S.C. § 522 with state exemption laws typified in the legislative history of the Act as “outmoded”, the bankruptcy court adjudged that “[f]or a state to effectively opt its citizens out of § 522(d) it must provide a scheme of exemptions which is consistent with this policy”, to wit, not inconsistent with or more restrictive than the exemptions enumerated in § 522(d). 14 B.R. at 632, 632 and 634 respectively. Having concluded that Congress had preempted the field of exemptions and that Tennessee’s state homestead exemption conflicted with the federal homestead exemption Tennessee’s opt-out statute was declared “invalid”. 14 B.R. at 635.
 

 It is fundamental that the state and federal legislatures share concurrent authority to promulgate bankruptcy laws,
 
 Sturges v. Crowningshield,
 
 17 U.S. (4 Wheat) 119, 4 L.Ed. 529 (1819), and that the Supremacy Clause and the doctrine of preemption will serve to invalidate state promulgations to the extent that they are inconsistent with or contrary to federal laws.
 
 Perez v. Campbell,
 
 402 U.S. 637, 91 S.Ct.
 

 1704, 29 L.Ed.2d 233 (1971). It is equally axiomatic, however, that Congress has not preempted an area wherein it has legislated when it expressly and concurrently authorizes the state legislatures to disregard or opt-out of such federal legislative area. In such instance, rather than preempting the area, Congress expressly authorizes the states to “preempt” the
 
 federal
 
 legislation. Congress did not intend to preempt bankruptcy exemptions through promulgation of 11 U.S.C. § 522(d) since it vested in the states the ultimate authority to determine their own bankruptcy exemptions. 11 U.S.C. § 522(b)(1). Section 522(b)(1) encompasses no facial restrictions upon the states’ authority to opt-out. The Fifth Circuit has recently adjudged that the states are empowered to create whatever exemptions they elect:
 

 The unambiguous language of section 522(b) implicitly indicates a state may exempt the same property included in the federal laundry list [§ 522(d)], more property than that included in the federal laundry list, or less property than that included in the federal laundry list. The states also may prescribe their own requirements for exemptions, which may either circumscribe or enlarge the list of exempt property.
 

 In re McManus,
 
 681 F.2d 353, 355-56 (5th Cir.1982) (footnote omitted). Similarly, the Seventh Circuit has rejected the contention that Illinois’ less beneficial exemptions are preempted by § 522(d):
 

 In summary, however appropriate a preemption analysis might have been in
 
 Cheeseman [v. Nachman,
 
 656 F.2d 60 (4th Cir.1980)], we think that it is not relevant to the issue presented by the present case. To say that state exemption provisions providing less solace to debtors than the federal exemptions of section 522(d) are in “conflict” with either the language of the Code or expressions of Congressional intent underlying it is simply inaccurate. If Congress has the power to
 
 *164
 
 permit states to set their own exemption levels, the Illinois provisions are constitutional.
 

 In re Sullivan, supra,
 
 680 F.2d at 1137. The Fourth Circuit has adjudged that § 522(b)(1) affords each state the option to restrict its residents to the exemptions permitted by the laws of the particular state, and that residents of Virginia, which has exercised the option to opt-out, are not only restricted to state exemptions but must moreover comply with the state mechanisms for claiming those exemptions.
 
 In re Morgan,
 
 689 F.2d 471 (4th Cir.1982).
 
 See also: In re Lausch,
 
 16 B.R. 162, 165 (M.D.Fla.1981) (“§ 522(b)(1) is not an unconstitutional delegation of congressional legislative power but rather is merely a recognition of the concurrent legislative power of the state legislatures to enact laws governing bankruptcy exemptions.”);
 
 In re Curry,
 
 5 B.R. 282, 286 (Bkrtcy.N.D.Ohio 1980) (“[A] debtor domiciled in Ohio may only exempt from property of his estate property that is specified under Ohio Revised Code Section 2329.66.”);
 
 In re Ambrose,
 
 4 B.R. 395 (Bkrtcy.N.D.Ohio 1980).
 

 The Fifth Circuit has further observed that it
 

 is inescapable that Congress must have realized that the states may enact different exemptions which would possibly conflict with Congress’ own exemption policy as it was reflected in § 522(d).
 

 In re McManus, supra,
 
 681 F.2d at 357, note 7. Indeed if Congress intended to foreclose the states from promulgating more restrictive exemptions it could simply have enacted the exemption scheme currently embodied in § 522(d) and not provided the states with an election to opt-out. The Supremacy Clause would have prevented the states from promulgating more restrictive and, therefore, inconsistent bankruptcy exemptions. When the bankruptcy court in the case at bar adjudged that Tennessee could not promulgate a homestead exemption less beneficial to debtors than that of its federal counterpart, said court effectively reduced § 522(b)(1) to an exercise in legislative futility.
 

 As T.C.A. § 26-2-112 is constitutional as challenged, the judgment of the bankruptcy court is Reversed and this action is Remanded for further proceedings consistent with this opinion.
 

 [1]
 

 . This Court does not address the legal consequences of
 
 Northern,
 
 and the subsequent stay of execution thereof, upon bankruptcy courts’ authority to exercise jurisdiction under § 1471 from June 28, 1982 until December 24, 1982, and, axiomatically, whether entries during this interim period should be afforded
 
 de facto
 
 validity upon appellate review. Almost all bankruptcy courts confronting this issue have concluded that the jurisdictional proscriptions of
 
 Northern
 
 did not attach until the stay of execution of judgment expired or was dissolved.
 

 See: In re Cherry Pond Coal Co.,
 
 21 B.R. 592 (S.D.W.Va.1982);
 
 In re Hotel Associates, Inc.,
 
 22 B.R. 964 (Bkrtcy.E.D.Pa.1982);
 
 In re Coby Glass Products Co.,
 
 22 B.R. 961 (Bkrtcy.D.R.I.1982);
 
 In re International House of Pancakes, Inc.,
 
 22 B.R. 926 (Bkrtcy.N.D.ILL.1982);
 
 In re National Trade Corp.,
 
 22 B.R. 877 (Bkrtcy.N.D.Ill.1982);
 
 In re Ocean Developments of Amenca, Inc.,
 
 22 B.R. 834 (Bkrtcy.S.D.Fla.1982);
 
 In re Baker, 22
 
 B.R. 791 (Bkrtcy.D.Md.1982);
 
 In re M.J.S. Apparel, Inc.,
 
 22 B.R. 736 (Bkrtcy.E.D.N.Y.1982);
 
 In re Rapco Foam, Inc., 22
 
 B.R. 637 (Bkrtcy.W.D.N.Y.1982);
 
 In re Cumberland Enterprises, Inc.,
 
 22 B.R. 626 (Bkrtcy.M.D.Tenn.1982);
 
 In re Young, 22
 
 B.R. 620 (Bkrtcy.N.D.Ill.1982);
 
 In re Cascade Oil Co., Inc.,
 
 22 B.R. 348 (Bkrtcy.S.D.N.Y.1982);
 
 In re National Sugar Refining Co., 22
 
 B.R. 279 (Bkrtcy.S.D.N.Y.1982);
 
 In re Vaniman International, Inc.,
 
 22 B.R. 166, 195 (Bkrtcy.E.D.N.Y.1982);
 
 In re O.P.M. Leasing Services, Inc.,
 
 21 B.R. 986 (Bkrtcy.S.D.N.Y.1982);
 
 In re Dembar Corp.,
 
 21 B.R. 858 (Bkrtcy.S.D.Fla.1982);
 
 In re Otero Mills, Inc.,
 
 21 B.R. 645 (Bkrtcy.D.N.M.1982);
 
 In re Riggins,
 
 21 B.R. 388 (Bkrtcy.E.D.Pa.1982);
 
 Contra: In re Meeker, 22
 
 B.R. 745 (S.D.Ohio 1982).
 

 [2]
 

 . Alabama, Arizona, Arkansas, Colorado, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Montana, Nebraska, New Hampshire, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, South Dakota, Tennessee, Utah, Virginia, West Virginia and Wyoming.
 

 [3]
 

 . It appears that the bankruptcy court was referring to the Bankruptcy Clause when it proclaimed that “Congress obviously did not intend, and, in any event, was
 
 constitutionally prohibited from,
 
 delegating unfettered authority to the states to regulate bankruptcy exemptions.” 14 B.R. at 633 (emphasis added).