**In re Brad BECKWITH, Jennifer Beckwith, Debtors.**

No. 10–51897.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

March 31, 2011.

759

Myron N. Terlecky, Columbus, OH, for Debtor.

***MEMORANDUM OPINION AND OR-DER ON TRUSTEE'S OBJECTION TO DEBTORS' CLAIMED EXEMP-TIONS***

C. KATHRYN PRESTON, Bankruptcy Judge.

This cause came on for evidentiary hearing on August 31, 2010, upon Trustee's Objection to Debtors' Claimed Exemptions (the "Objection") (Doc. 33), the Debtors' Reply thereto (the "Reply") (Doc. 40), and Trustee's Response (the "Response") (Doc. 46). Present at the hearing were Treisa Martin Fox, counsel for Chapter 7 Trustee Susan Rhiel (the "Trustee"), Myron Terlecky, counsel for Debtors, and Debtor Jennifer Beckwith.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334 and the General Order of reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue is properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

The issue before the Court is whether Brad Beckwith and Jennifer Beckwith (the "Debtors"), are limited to claiming exemptions pursuant to Florida's statutory scheme, or may instead elect federal exemptions pursuant to 11 U.S.C. § 522(b)(3). For the reasons stated below, the Court concludes that Debtors may claim the federal exemptions set forth in § 522(d). Therefore, the Court overrules Trustee's Objection to Debtors' Claimed Exemptions.

## I. Background

The facts germane to this matter are not in dispute: Debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the Southern District of Ohio on February 25, 2010 (the "Petition Date"). At the time of the Petition Date, Debtors resided in Ohio. However, for the 730–day period prior the Petition Date, Debtors continuously transitioned between Ohio and Florida, and for the 180–day period preceding the 730–day period prior to the Petition Date, Debtors were domiciled in Florida.

Initially, Debtors claimed exemptions pursuant to Florida law. Subsequently, on April 6, 2010, Debtors amended their Schedule C to claim federal exemptions under § 522(d), whereupon Trustee filed her objection to Debtors' claim of exemptions.

## II. Applicable Law

The commencement of a bankruptcy case creates an estate comprised of all of a debtor's property. 11 U.S.C. § 541(a). The bankruptcy estate of a chapter 7 case consists of all assets of the debtor as of the date of filing of the case, including claimed exemptions. *In re Brooks*, 393 B.R. 80, 84 (Bankr.M.D.Pa. 2008). Section 522(b)(1) provides that a debtor may exempt specific assets from the bankruptcy estate pursuant § 522(b)(2) or (3) of the Bankruptcy Code.[1] Under paragraph (2) of that section, a debtor may claim federal exemptions set forth in § 522(d) so long as the applicable state has not "opted-out" and enacted its own exemptions. Specifically, § 522(b)(2) states in pertinent part, that property may be claimed which is ". . . specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize." 11 U.S.C. § 522(b)(2). Consequently, a court must first turn to § 522(b)(3)(A) to determine which state's exemption law applies. *See In re Garrett*, 435 B.R. 434 (Bankr.S.D.Tex.2010).

In 2005, Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), working significant amendments into the Bankruptcy Code as it then existed. Section 522, addressing the topic of exemptions, was among the many sections of the Code altered by BAPCPA. Section 522(b)(3)(A) of the Bankruptcy Code now describes property which may be claimed exempt as follows:

> . . . any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is

---

1. Section 522(*l*) and Fed. R. Bankr.P. 4003(a) require a debtor to file a list of property that the debtor claims as exempt, and unless a party in interest objects, the debtor's exemptions will be deemed allowed. The "objecting party has the burden of proving that the exemptions are not properly claimed." Fed. R. Bankr.P. 4003.

applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition *or if the debtor's domicile has not been located at a single State for such 730–day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730–day period or for a longer portion of such 180–day period than in any other place[.]*

11 U.S.C. § 522(b)(3)(A) (2010) (emphasis added), *amended by* Bankruptcy Technical Corrections Act of 2010, Pub. L. 111–37, 124 Stat. 3557 (Dec. 22, 2010). When Congress amended § 522, it created special exemption rules for a certain class of debtors: those who have relocated from one state to another within a defined period of time. *In re Chandler,* 362 B.R. 723, 729 (Bankr.N.D.W.Va.2007). Congress's intent when enacting the current version of this statute is expressly articulated:

> Under current bankruptcy law, debtors living in certain States can shield from their creditors virtually all of the equity in their homes. In light of this, some debtors actually relocate to these states just to take advantage of their "mansion loophole" laws. S. 256 closes this loophole for abuse by requiring a debtor to be a domiciliary in the state for at least two years before he or she can claim that state's homestead exemption; the current requirement can be as little as 91 days.

*Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 256,* H.R.Rep. No. 109–31, pt. 1, at 15–16, 2005 U.S.C.C.A.N. 88, 101–102 (2005); *see also* 14 Collier on Bankruptcy, *Exemptions* Intro.02[2] (Alan N. Resnick & Hen-

ry J. Sommers, eds., 15th ed. rev. 2006) ("The clear intent of the 2005 amendments is to prevent possible abuse of the bankruptcy process by making it much more difficult for debtors to take advantage of one state's more generous exemptions.").

■ In the instant case, Debtors filed their bankruptcy petition in Ohio on February 25, 2010, where they had resided for 180 days preceding the Petition Date. Nevertheless, in order for Ohio law to apply, Debtors must have been domiciled in Ohio for 730 days preceding their filing. *See* 11 U.S.C. § 522(b)(3)(A). This period is commonly referred to as the "look-back period." [2] Debtors were domiciled neither in Ohio nor Florida nor any other state for the look-back period, a fact Trustee does not dispute; however, the Bankruptcy Code provides a solution.

■ When a debtor fails to maintain residency in a single state for the entire look-back period, the Bankruptcy Code prescribes that the domicile of the debtor is based on the debtor's place of residence during the 180–day period preceding such a look-back period. *See* 11 U.S.C. § 522(b)(3)(A). Debtors in the instant case were domiciled in Florida during the 180–day period preceding the 730–day period. Accordingly, Florida is Debtors' proper domiciliary for purposes of § 522 in the case at hand, and its exemption law governs Debtors' exemption claims.

■ Once the proper domicile has been determined, a court must look to whether the applicable state has elected to opt-out of the federal exemption scheme and create its own. *See* 11 U.S.C. § 522(b)(2). Florida is an "opt-out" state. Florida Statutes § 222.20 states that:

---

**2.** Some courts refer to the 180–day period preceding the 730–day period as the "look-back period." *See, e.g., In re Garrett,* 435 B.R. 434, 438 (Bankr.S.D.Tex.2010); *In re Arrendondo–Smith,* 436 B.R. 412, 416 (Bankr. W.D.Tex.2010).

In accordance with the provision of s. 522(b) of the Bankruptcy Code of 1978 (11 U.S.C. 522(b)), *residents of this state* shall not be entitled to the federal exemptions provided in s. 522(d) of the Bankruptcy Code of 1978 (11 U.S.C. s. 522(d)). Nothing herein shall affect the exemptions given to residents of this state by the State Constitution and the Florida Statutes.

Fla. Stat. § 222.20 (2010) (emphasis added). The question then becomes, are Florida's exemptions available only to its residents or are the exemptions given extraterritorial application?

Florida's exemptions are set forth in the Florida Constitution and Chapter 222 of the Florida Statutes. Article X, section 4 of the Florida Constitution states:

> (a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
>
> (1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or the owner's family;
>
> (2) personal property to the value of one thousand dollars.

FLA. CONST. art. X, § 4. As can be seen, there is no specific language limiting assertion of the exemption to residents of the state of Florida. Similarly, except for provisions of Fla. Stat. §§ 222.13 and 222.14, pertaining to life insurance policies and annuity contracts, there is no language in chapter 222 of the Florida Statutes limiting to residents of Florida the benefits of exemptions described therein. *See* Fla. Stat. § 222.01–.30. Nonetheless, courts have held that Florida exemptions may not be claimed by nonresidents. *See e.g., In re Adams,* 375 B.R. 532 (Bankr.W.D.Mo. 2007), and cases cited therein. This is consistent with the majority of the courts which have considered and upheld state residency requirements as a condition to invoking the state's exemptions. *See., e.g., In re Jewell,* 347 B.R. 120 (Bankr. W.D.N.Y.2006) (holding that Colorado state exemptions were available only to residents and thus not available to the debtors inasmuch as they were not Colorado residents); *In re Crandall,* 346 B.R. 220 (Bankr.M.D.Fla.2006) (holding that the debtor was not entitled to claim New York's exemptions because she was no longer a New York resident and New York's exemptions were limited to residents of that State). It is this specific issue, viewed through the lens of § 522(b)(3)(A), on which Trustee and Debtors diverge.

Courts are divided on the conundrum that arises when § 522(b)(3)(A)'s domicile rule forces a selection of a particular state's exemption scheme, while that state restricts application of its exemptions solely for the benefit of residents of that state. *Compare e.g., In re Garrett,* 435 B.R. 434 (Bankr.S.D.Tex.2010) (finding that § 522(b)(3)(A) preempts state law restricting use of state exemptions to its residents) with *In re Brooks,* 393 B.R. 80 (Bankr.M.D.Pa.2008) (finding against preemption of state exemption law by § 522(b)(3)(A)). Once again the Bankruptcy Code appears to provide a solution:

when application of § 522(b)(3)(A) denies to a debtor any exemptions, he or she may resort to the "hanging paragraph" of § 522(b)(3). That paragraph states, "If the effect of the domiciliary requirement under subparagraph (A) is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified in subsection (d)." 11 U.S.C. § 522(b)(3).

### III. Arguments of the Parties

Trustee argues that § 522(b)(3)(A) of the Bankruptcy Code articulates a choice-of-law provision which preempts any residency restriction imposed by Florida law. Trustee asserts that when compliance with both federal and state law is impossible, the doctrine of preemption requires this Court to give full effect to the objectives of Congress. That objective was to frustrate debtors' efforts to shield assets by relocating to a state with more generous exemptions shortly prior to filing a bankruptcy proceeding; thus, in Trustee's opinion, the Court must ignore Florida's residency restriction and apply the Florida exemptions to Debtors. In addition, Trustee asserts that § 522(b)'s "savings clause" does not apply because the federal domiciliary requirement of § 522 does not render them unable to claim any exemptions.

Conversely, Debtors contest that Florida law is preempted by § 522(b)(3). Debtors highlight the plain language of § 522(b)(3)'s hanging paragraph in support of their position. Additionally, Debtors point out that the majority of courts hold that residency restrictions are enforceable, even in the face of the choice-of-law provisions of § 522(b). Consequently, Debtors argue, because they are not residents of Florida, they are ineligible to claim exemptions provided by Florida law, and further, Florida's exemptions are not given extraterritorial effect. Thus, say Debtors,

§ 522(b)(3) allows them to select the federal exemptions contained in § 522(d).

### IV. Analysis

 Preemption is a doctrine grounded in the Supremacy Clause articulated in Article VI of the Constitution of the United States. Article VI of the Constitution provides in pertinent part:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI. The Supreme Court has interpreted the Supremacy Clause to render invalid any state law conflicting with a valid federal law. *See Farina v. Nokia, Inc.*, 625 F.3d 97 (3d Cir.2010); *Cadle Co. v. Banner (In re Banner)*, 394 B.R. 292, 304 (Bankr.D.Conn.2008) (citing *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981)). There are three types of federal law preemption:

> Federal law can preempt state law in three ways: (1) express preemption, (2) field preemption, and (3) conflict preemption.... Express preemption applies where Congress, through a statute's express language, declares its intent to displace state law. Field preemption applies where "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." ... Conflict preemption nullifies state law inasmuch as it conflicts with federal law, either where compliance with both laws is impossible or where state law erects an "obstacle to the accomplishment and execution of

the full purposes and objectives of Congress."

*Farina,* 625 F.3d at 115 (internal citations omitted).

 In every preemption case, courts engage in a two-part analysis. *Id.* First, the court "start[s] with the basic assumption that Congress did not intend to displace state law." *Farina,* 625 F.3d at 116 (citing *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981)). To avoid "unintended encroachment on the authority of the States, ... a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find preemption...." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). The United States Supreme Court has "referred to this as a "presumption against preemption." " *Farina,* 625 F.3d at 116 (citing *Wyeth v. Levine,* 555 U.S. 555, 129 S.Ct. 1187, 1195 n. 3, 173 L.Ed.2d 51 (2009)). This "presumption applies with particular force in fields within the police power of the state, but does not apply where state regulation has traditionally been absent." *Id.* Then the court must determine " 'the purpose of Congress [which] is the ultimate touchstone' of preemption analysis." *Cipollone,* 505 U.S. at 516, 112 S.Ct. 2608 (citation omitted).

 There are several factors to evaluate when determining whether the presumption against preemption is overcome. First, the court must consider whether "[t]he scheme or federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947) (citing *Pennsylvania R. Co. v. Public Serv. Comm'n,* 250 U.S. 566, 569, 40 S.Ct. 36, 63 L.Ed. 1142 (1919)). Next, the court should

contemplate whether "the Act of Congress ... [has touched] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.* citing *Hines v. Davidowitz,* 312 U.S. 52, 61, 61 S.Ct. 399, 85 L.Ed. 581 (1941). Finally, the court must discern whether "the object sought to be obtained by the federal law and the character of obligations imposed by it ... reveal the same purpose." *Id.*

 Since 1867 Congress has allowed debtors to exempt property from the bankruptcy estate by invoking state law exemptions. *See Richardson v. Schafer (In re Schafer),* 2011 WL 650545, at *5, 2011 Bankr.LEXIS 564, at *14 (6th Cir. BAP 2011). In the Bankruptcy Reform Act of 1978, Congress afforded significant deference to state law by allowing bankruptcy debtors to choose state exemptions and by further allowing States to opt out of the federal exemption scheme entirely. *Patriot Portfolio, LLC v. Weinstein (In re Weinstein)* 164 F.3d 677, 683 (1st Cir. 1999), *cert. denied,* 527 U.S. 1036, 119 S.Ct. 2394, 144 L.Ed.2d 794 (1999). Prior to the enactment of BAPCPA in 2005, it was well settled that "Congress did not intend to preempt bankruptcy exemptions through promulgation of 11 U.S.C. § 522(d) since it vested in the States the ultimate authority to determine their own bankruptcy exemptions." *Rhodes v. Stewart,* 705 F.2d 159, 163 (6th Cir.1983). In *Rhodes,* the Sixth Circuit Court of Appeals recognized it "axiomatic ... that Congress has not preempted an area wherein it has legislated when it expressly and concurrently authorizes the state legislatures to disregard or opt-out of such federal legislative area...." *Id.* It appears that Congress' intent in allowing States to opt-out was to "expressly authorize the states to 'preempt' the federal legislation." *Id.*

The *Rhodes* Court further found that "11 U.S.C. § 522(b)(1) is not an unconstitutional delegation of congressional legislative power but rather is merely a recognition of the concurrent legislative power of the state legislatures to enact laws governing bankruptcy exemptions." *Id.* citing *Kosto v. Lausch (In re Lausch)*, 16 B.R. 162, 165 (M.D.Fla.1981).

The Fifth Circuit Court of Appeals added that "The states also may prescribe their own requirements for exemptions...." *In re McManus*, 681 F.2d 353, 355–56 (5th Cir.1982). And the Seventh Circuit chimed in, recognizing that

> For property to be exempt under state or local law, it must be claimed as exempt in the manner prescribed by those laws. Thus, the exemption conferred by [§ 522(b)(2) ] presupposes compliance with the pertinent state and local laws.... By filing the list of claimed exemptions pursuant to § 522(*l* ), the debtor asserts his belief that he is entitled to exempt that property. Whether that belief is correct will be determined through application of § 522(b)(2)(A) and the state or local exemptions incorporated therein. Therefore, the § 522(*l* ) filing is not a substitute for compliance with the state or local law.

*Zimmerman v. Morgan (Matter of Morgan)*, 689 F.2d 471, 472 (4th Cir.1982).

The question presented by the parties is whether the amendments wrought by BAPCPA effected preemption in the area of exemptions when the provisions of § 522(b)(3) and state law appear to collide. Persuasive authority supports the Trustee's position that § 522(b)(3) preempts residency restrictions and forces Debtors in the instant case to use Florida's exemptions. *See Garrett*, 435 B.R. 434. The underlying rationale is that state residency restrictions constitute a choice-of-law provision and when these provisions force debtors to elect federal exemptions, they conflict with the expressed will of Congress. When it amended § 522 to add the choice of law and look-back provisions, Congress sought to limit a debtor's ability to enhance his exemptions by moving shortly prior to filing to a venue with more favorable exemptions. If residency restrictions are allowed to stand, debtors in cases like this one would be empowered to utilize federal exemptions, and place themselves in a position they would not have been but for moving to and filing bankruptcy in a different state.[3]

Courts following this rationale have concluded that § 522(b)(3)(A) constitutes a federal choice-of-law and that state residency restrictions constitute a state choice-of-law provision; thus, when these provisions conflict, federal law controls. These courts reason that § 522(b)(3)(A) does not incorporate state law in its entirety and while it recognizes a state's ability to "opt-out" of the federal scheme, the Bankruptcy Code does not acquiesce to state conflict-of-law provisions. However, this Court need not decide whether the federal statute preempts any residence requirements of Florida law. This is because of the language of Florida's opt-out statute.

Congress expressly gave the States authority to implement their own exemption scheme by allowing them to opt-out of the federal exemptions.[4] Florida did this un-

---

**3.** A majority of States have already enacted legislation prohibiting debtors from electing the federal exemptions set forth in § 522(d). 14 *Collier on Bankruptcy, Exemptions* Intro.02[3].

**4.** It is well established that this does not do violence to Uniformity Clause contained in the Constitution of the United States. *Storer v. French (In re French)*, 58 F.3d 1125 (6th Cir.1995); *Rhodes v. Stewart*, 705 F.2d 159 (6th Cir.1983), *In re Sullivan*, 680 F.2d 1131

der Fla. Stat. § 222.20. But that provision of Florida law applies, by its plain language, only to residents of the state. Section 222.20 states that *"residents of this state* shall not be entitled to the federal exemptions provided in s. 522(d) of the Bankruptcy Code of 1978...." The statute does not purport to apply to non-residents.[5] As observed by the Fifth Circuit Court of Appeals in *In re Camp,* 631 F.3d 757 (5th Cir.2011), "Florida's opt-out statute, by its own express terms, does not apply to nonresident debtors, who remain eligible to use the federal exemptions because nothing in Florida law specifically disallows them from doing so." *Camp, id.* at 760. In the instant case, as in *Camp,* Debtors were not Florida residents at the time of filing of their case, and thus, Florida law does not inhibit their access to federal exemptions.

 Even if the residency requirements of Florida's exemption law fall to preemption by virtue of § 522(b)(3)(A), preemption cannot overcome Florida's opt-out. This is because Congress itself granted to the States the right to opt-out, thereby emasculating Congress' ability to preempt state law in this particular area. *See* 11 U.S.C. § 522(b)(2). "Congress has not preempted an area wherein it has legislated when it expressly and concurrently authorizes the state legislatures to disregard or opt-out of such federal legislative area...." *Rhodes,* 705 F.2d at 163. Moreover, despite knowing the status of the law at the time of passage of BAPCPA, Congress did not choose to materially amend the provision authorizing the various States to "opt-out" when it imposed the look-back period on debtors, although it could have done so.[6]

Because the applicable statute does not opt-out with respect to nonresidents, they are not ineligible to claim federal exemptions. In the absence of state law to the contrary, § 522(b)(1) allows debtors to select *either* federal or state exemptions. Thus, Debtors in the instant case are not foreclosed from claiming federal exemptions.

## V. CONCLUSION

This Court finds that a debtor who resides in Ohio but who is forced into using a Florida exemption pursuant to § 522(b)(3)(A) may elect federal exemptions listed in § 522(d). Debtors may not claim Florida exemptions because they were not Florida residents, and since the domiciliary requirement contained in § 522(b)(3)(A) renders them ineligible to claim exemptions under any other state's laws, Debtors may claim federal exemptions. Therefore, it is

**ORDERED** and **ADJUDGED** that the Trustee's Objection to Debtors' Claimed Exemptions is **OVERRULED.**

**IT IS SO ORDERED.**

---

(7th Cir.1982). The Uniformity Clause refers to Article I, Section 8, clause 4 which grants to Congress the power "[t]o establish ... uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl. 4.

5. Indeed, Florida would be hard pressed to legislatively dictate opting-out to non-residents. It clearly could, however, decide the scope of resort to its exemptions by nonresidents. Whether it has need not be decided by the Court today.

6. Legislative history illustrates that Congress did not intend to effect the authority of the States to opt-out: "The bill does not alter the opt out rule in the Bankruptcy Code...." H.R.Rep. No. 109–31 at 593–94, 2005 U.S.C.C.A.N. at 215 (2005).